AMBROSE H. SEVIER *against* PETER HOLLIDAY.

ERROR *to Clark Circuit Court.*

An attorney is not liable in the discharge of his official duty, for claims put into his hands to collect as such attorney, unless it be shown that he has been guilty of culpable negligence in the prosecution of the suit, and that thereby the plaintiff has lost his debt.

Nor can he be held liable for money collected by him as an attorney, unless a demand be made upon him and he refuses to pay it over, or remit it, according to the instructions of his client.

Where there is any defect, imperfection, or omission, in any pleading, whether in substance or form, which would have been a fatal objection on demurrer, yet, if the issue joined be such as necessarily requires, on the trial, proof of the facts so defectively or improperly stated, or omitted, and without which it is not to be presumed that either the Judge would have directed the jury to give, or the jury would have given, a verdict, such defect, imperfection or omission, is, by the Common Law, cured by the verdict.

After verdict, nothing is to be presumed, except what is expressly stated in the declaration, or what is necessarily implied from the facts that are stated : that is, where the *whole* is stated to exist, the existence of the *parts* is implied; and where the *claim* is alleged to exist, the existence of the *component links* will be implied after verdict.

If the plaintiff wholly omits to state a good title or cause of action, even by implication, matters which are neither stated nor implied need not be proved at the trial, and there is no room for intendment or presumption ; as the intendment must arise from the verdict, when considered in connection with the issue upon which it was given.

If any thing essential to the plaintiff's action be not set forth, though the verdict be found for him, he cannot have judgment ; because, if the essential parts of the declaration be not put in issue, the verdict can have no relation to it ; and if it had been put in issue it might have been found false.

Therefore, in an action against on attorney, for failure to collect a note, a count stating that the plaintiff caused to be delivered to the defendant, and the defendant received from him a note made by a third person, calling for so many dollars, to bring suit on, recover and collect of that third person, for the use and benefit of the plaintiff, for certain fee and reward to the defendant in that behalf; is so defective in stating the plaintiff's title to sue, that a verdict upon it in favor of the plaintiff will not sustain the judgment.

No title to the note, in the plaintiff, is stated by, or implied in, any of these allegations; and no facts are stated, which could not be proven, without at the same time establishing the plaintiff's title to the note, or legal right to receive the proceeds.

Nor is it stated or implied that the note was due when so delivered, nor to whom it was payable, nor what sum, (if any thing,) was due upon it.

Such a count shows a defective title, and not a title defectively stated : and no proof is admissible under such a count, which can make it good.

And under such a count, a receipt given by the defendant stating that he had received of the plaintiff a note of so many dollars, against A. B. in favor of C. D., so far from proving the title to the note to be in the plaintiff, proves it to be in C. D., who is the legal owner, and is held in law to have possession of it. Such a receipt is, therefore, inadmissible as evidence under such a count.

Reasons assigned by the court for permitting particular evidence to be adduced, not given as instructions, nor addressed to the jury, can have no bearing on the case :

Sevier *against* Holliday.

nor can they be excepted to. The Court of Errors looks to the admission or rejection of the testimony, and not to the reasons assigned for it.

A party cannot be allowed to prove more than he has alleged in his declaration; and when he omits to allege a fact essential to his action, and not involved or implied in the pleadings, or inferable from the verdict, he can offer no proof of such a fact.

A party having no interest in a note cannot be injured by the failure of an attorney to collect it. If his declaration does not show such an interest, or such an interest is not legally implied from its allegations, he cannot prove his interest—nor does he show any right to recover

To entitle a plaintiff to recover in trover, two things are necessary to be stated and proven : *First,* property, either general or special in the plaintiff; and *second,* a wrongful conversion.

In trover for a note, the omission to state in the declaration that the plaintiff was possessed of the note as of his own property, or that it came to the possession of the defendant by finding, would be fatal on general demurrer, but are probably cured by verdict.

But the introduction of such a receipt as is mentioned above disproves the plaintiff's title to the note, and establishes the interest of another in it ; and consequently precluded a recovery.

Absent, RINGO, *Chief Justice.*

This was an action on the case. The declaration contained three counts. The first alleged that Sevier was an attorney, and that on the 14th day of November, A. D. 1825, Holliday caused to be delivered to him, and he then received and accepted a note of hand made by one Joshua J. Henness, calling for one hundred and thirty-three dollars, to bring suit on, recover and collect from Henness, for the use and benefit of Holliday, for certain fees, &c., but did not bring suit thereon; so that Holliday lost the debt.

The second count is, that on the same day, Holliday caused to be delivered to Sevier, attorney as aforesaid, " a certain other note for one hundred and thirty-three dollars, to him the said Ambrose H. Sevier, being such attorney as aforesaid, in a reasonable time then next following suit brought on it, and the said debt of $133, as aforesaid, recovered and collected of, and from the said Henness, for the use and benefit of the said Holliday, for certain fees, &c;" that Sevier received the note and undertook to sue, recover and collect, but did not bring suit, so that the debt is lost.

The third count is in trover, for " a certain other note for $133, made by Joshua J. Henness"—the proper goods and chattels of Holliday.

At September term, 1827, before HALL, Judge, the defendant filed a general demurrer, to the declaration, to which there was a joinder.

At March term, 1828, before TRIMBLE, Judge, the demurrer was overruled, judgment for the plaintiff entered on the demurrer, and a writ of enquiry ordered.

At July term, 1828, the verdict was set aside, on affidavit of the defendant, the defendant filed his plea of not guilty; to which issue was joined, and a jury was called, who not agreeing were discharged; and the case continued.

At March term, 1830, to which time the cause was regularly continued, a second jury found a verdict for the plaintiff of $168, 04¼ cents damages; for which judgment was rendered.

On the trial the plaintiffs offered in evidence a receipt, of which the following is a copy :

" Received of Peter Holliday one note of one hundred and thirty-three dollars against Joshua J. Henness, drawn in favor of Wm. English. This 14th November, 1825. A. H. SEVIER."

To the introduction of this receipt as evidence the defendant objected, but the court said that " it was evidence conducing to prove a privity of contract between the plaintiff and the defendant:" and so admitted it as evidence. To this the defendant excepted. No other evidence is stated on the record, nor is this shown to have been *all* the evidence.

The defendant then moved, in arrest of judgment, for divers defects in the declaration, and his motion was overruled.

The cause was then brought, by writ of error, to the Superior Court of the Territory, in 1830; and the following grounds of error were assigned:

1st. That the declaration is insufficient.

2d. Judgment for *Holliday*, when it should have been for *Sevier*.

3d. That it does not appear, in the record, to whom the notes therein mentioned were payable, whose notes they were, or that they or either of them belonged to or were the property of Holliday.

4th. That the consideration for the contracts made by Sevier, is not *formally* or expressly stated in the declaration.

5th. That the plaintiff does not show property in the notes, or where they were *converted* by the defendant.

6th. The admission of the receipt in evidence, and the remarks of the Judge thereon.

After several arguments, no decision having been had, it was argued at July term, 1837, by

HALL, for plaintiff in error:

It is no where stated in either count of said declaration whose notes they were, nor to whom payable; nor is it stated that they, or either of them, belonged to Holliday. The two first counts do not state formally or expressly the consideration for the contracts therein mentioned, nor is there any venue laid as to the concession in the third count, nor is there any discrimination whether the notes mentioned in the first, second, and third counts, are the same or different. Demurrer to this declaration was overruled, and Sevier pleaded not guilty—and on the trial of the cause the court admitted the receipt of Sevier, given for a note payable to William English, to be given in evidence without proof of the plaintiff tested thereto, and instructed the jury that the receipt itself was evidence conducing to prove a privity of contract between Holliday and Sevier. The contract in the two first counts should contain a statement of the consideration in terms or in substance. See 1 *Chitty*, 368; *Idem* 296; as to the plaintiff's right to sue, see 1 *Chitty*, 3; *1st Sanders*, 172; *10th J. R.*, 387; as to the plaintiff's interest to the property, see *1st Chitty*, 150.

TRAPNALL & COCKE, *Contra:*

The counsel for Sevier assign for the first error, that the declaration of Holliday is insufficient. The declaration is *good*, (but after withdrawal of demurrer, *admitting* for *argument* that it was bad,) the defects are cured, and cannot be taken advantage of in arrest of judgment. 2 *Marshall*, 143, 254, 496; 3 *Bibb*, 520, 521; 2 *Bibb*, 62; 1 *Bibb*, 257; 1 *Chitty*, and *Stephen on pleading*.

2nd assignment is general and without point, and of course signifies nothing. 1 *Bibb*, 505.

3rd assignment: That the declaration does not show to whom the notes were payable. The suit is not upon the note—but the declaration shows that the notes were owned by, and belonged to, Holliday,

and that he made the contract and engagement with Sevier, and suit was brought for a violation of that contract or engagement.

4th: The consideration for the contract is not formally or expressly stated. The answer to the first assignment is conclusive to this—but the assignment is not true in fact or correct in law; the consideration is sufficiently stated, 3 *Bibb* 517; 1 *Saunders on pleading, marginal page* 164, *and case cited*; 2 *Chitty's pleading,* 373, *and notes.*

5th assignment: That plaintiff has not shown that said notes were his property, or where they were converted. To the first part of this, the remarks on the third assignment is a full answer. Notes pass by delivery as well as by assignment ; and when one man holds a note drawn payable to another, and exercises ostensible acts of ownership over it, the presumption of law is, that it is as much his note as if it was assigned. The assignment only raises a presumption, but still the holder or assignee holds the note and acts upon it as if it was drawn payable to himself, and so did Holliday in this case—and he alledges in the declaration that the note is his, in all the counts. As to the second part, that there is no venue, the venue is alleged distinctly; and if it was omitted it was no error: 1st, because it was a matter of no importance, 3 *Chitty,* 279; venue not necessary, 13 *J. R.,* 449; 3 *Bibb,* 73; 6 *Comyn's Digest, p.* 53; 5 *Mass.,* 94. 2nd, the omission, if there was one and it was material, was cured by withdrawing the demurrer as well as by verdict and jeosails. 1 *Chitty,* 250.

6th assignment: That the court permitted the plaintiff to give in evidence to the jury a receipt given to William English without showing any privity of contract between plaintiff and defendant. The first answer to this assignment of error is, that it is not true in fact, for the receipt referred to is not given to Wm. English, but is given to Holliday the plaintiff; reference is made to the receipt for the correctness of this statement. The contract for the collection of the note was made by Sevier with Holliday, the possessor and legal owner of the note, and not with English—and so the privity of contract existed between Holliday and Sevier, and not with English, who had nothing to do with the business. The receipt shows that the privity of contract was between Holliday and Sevier, the receipt of Sevier himself, the defendant, and thereupon the court decided cor-

rectly. Sevier admitted and acknowledged in his receipt, that the privity of contract was with Holliday, and, of course, that is sufficient and conclusive after the verdict. The record does not profess to state all the evidence; and therefore, after verdict, every thing is presumed as proved that is necessary to support it. 4 *Monroe,* 42; I *Bibb,* 308; 3 *Marshall,* 222; 1 *Marshall,* 101, 233; 2 *Marshall,* 197; 6 *Comyn's Digest,* 262; *Gould's Pleading,* 496, 498; *Roe vs. Haugh,* 3 *Salk.* 15.

7th assignment. That the judge instructed the jury that said receipt conduced to prove a privity of contract between plaintiff and defendant. The receipt of Sevier is given to Holliday; the contract was made with Holliday; and the violation of it, by Sevier, was to the damage of Holliday—and therefore the receipt not only conduces to prove the privity of contract, but absolutely proves the fact that the privity of contract was with Holliday, and no one else whatever.

The court not being satisfied what judgment to render, continued the case to January term, 1838, for further argument; and called the attention of counsel to the following points:

1st. Will a writ of error lie to reverse an erroneous decision upon demurrer?

2d. Does the record show all the proof adduced in the case?

3d. What is the legal presumption in favor of more proof, or is the record conclusive that the proof set forth in the bill of exceptions is all that was produced?

4th. What is meant by "privity of contract?" and do the words "conduce to prove," show that there was antecedent or subsequent proof in the case?

5th. Can any proof be given, to create a privity of contract, if such privity does not appear on the face of the writing declared on?

6th. To whom is the defendant liable? Could English sustain an action against him, after a recovery by Holliday?

7th. What is the difference between the practice in England and this country in relation to demurrers and the judgment thereon—and the reasons of the rule for such difference if any exists?

65

Upon which points, at January term, 1838, TRAPNALL & COCKE, for defendant in error, presented the following argument :

In answer to the points of argument made by the court, the counsel of Holliday respond to the first:

That after the withdrawal of the demurrer and entering of plea, arrest of judgment and writ of error are both estopped.  2 *Marshall,* 143, 254, 496; 3 *Bibb,* 521; *Stephen's Pl.* 327.

To the second:  The record does not profess to give all the *evidence,* and the presumption of law is, that every thing requisite to the judgment has been proven.  2 *Littell,* 180, 184; 5 *Littell,* 317, 221.

To the third point:  The presumption is just the contrary.  When a record does not profess to state all the evidence more is presumed.  See the same authority as in the second point.

To the fourth point:  When two persons make a contract, such as between Holliday and Sevier, when Holliday confided the note and Sevier promised him, and gave his receipt to collect to Holliday, between them was the privity of contract.  See 5 *Jacob's Law Dic.,* 7, 284; 1 *J. R.,* 91.  "*Conduce to prove*" means to promote or contribute to prove, and shows there may have been antecedent or subsequent proof, and there is need of more proof.  The record is conclusive as to the presumption that there was more.

To the fifth point:  This is an action of case, and there is no writing but the writing declared on.  The receipt of Sevier does show that he got the note from Holliday.  The presumption of law and fact is, that he was the owner, and that *presumption* is not *contradicted* by any thing in the *record.*

To the sixth point:  Sevier is responsible to the man with whom he made the contract, and to whom he gave the receipt; and this occurs every day.  And who was the man?  Holliday.  Did Sevier make his contract or engagement to collect the note with English ?  No.  Did he give the receipt to English?  No.  Then what right has English to sue him?  He is not responsible to English upon any principle of law or common sense.  The suit is for a breach of contract.  With whom was the contract made?  With English?  Certainly not.  Then what interest has he in the case ?

Sevier *against* Holliday.

In reply to the seventh point: There is no difference between the practice of this country and England in relation to demurrer and practice there, save what has been made by the statutes of this State. There is no difference so far as this case is concerned, as far as the counsel knows, has ever heard, or believes.

The case of Gunn is conclusive authority for Holliday. A note passes by delivery, and therefore the holder as well as the assignee is presumed to be the proprietor; as a man in the possession of a horse or negro is presumed to be the owner; and that presumption, both of law and fact, continues until it is repelled by proof. Cantine gave this receipt to Gunn for the collection of the covenant, and therefore *prima facie* Gunn was the owner, although it was drawn payable to another person; but it turned out in proof affirmatively, that Gunn was not the owner of the covenant, but that it belonged to another—and he was therefore defeated, because the legal presumption was repelled by affirmative proof. In this case the legal presumption in *favor* of Holliday stands without a particle of evidence to the contrary on any thing upon which to rest an inspection to the contrary, and the legal inference from the record is, that the fact of his being the owner was established to the satisfaction of the jury.

The receipt in this case is a matter of evidence only, and is not a matter of record; and therefore the receipt does not come up before the court on motion in arrest of judgment. *Tidd's Practice;* 1 *Chitty*, head *"Arrest of Judgment."*

Nothing but what is matter of record can be considered by the court on this motion.

In addition: The 6th and 7th assignments are causes of new trial and not in arrest of judgment. The instruction of the Judge on matters of evidence, are not of record, and therefore a motion which reaches nothing but errors 'apparent upon the record,' will not reach the two last assignments. See 1 *Starkie, title "New Trial;"* and 1 *Chitty* and *Stephens, title "Arrest of Judgment.'*

And at the same term, the court, by Dickinson, *Judge*, delivered the following opinion:

We deem it unnecessary to decide the question in relation to the

demurrer, because the party withdrew it and pleaded over to the action; nor are we disposed to disturb the rule that, whatever has been adjudged upon demurrer shall not again be re-examined upon a motion in arrest of judgment. This case, however, comes before us upon a writ of error. The whole record is open for inspection, and if there is any material error the court is bound to correct it. It is contended, on the part of Holliday, that inasmuch as the bills of exception do not set forth that the receipt offered was all the evidence before the jury, and that the word, " *conduced*," as inserted therein, means contributed, this court are bound to presume that there was other testimony which, in conjunction with the receipt, proved, sufficiently, the privity of contract. This reasoning, though in general good, will not warrant the conclusion in every instance. We are authorized to look into the whole record, and from the circumstances under which the receipt was admitted, and the language used in the bills of exception, to judge whether there was any other evidence adduced calculated to change the attitude of the parties in the question before us. We have directed our *attention to this point*, and are necessarily brought to the conclusion that there was not. The doctrine is clear that, in general, the action on a contract, whether expressed or implied, or whether by parole or under seal, or of record, must be brought in the name of the party in whom the legal interest is vested. Is there any evidence that the legal interest, at the time Sevier received the note, or at any subsequent period, was in Holliday? And does the receipt prove, or even conduce to prove, that he had either an equitable or beneficial interest? If, then, he had neither a legal, beneficial, nor equitable interest in the note, how is this privity raised? It is only by the one presumption that the note was received by him, repelled by the still stronger presumption that he was but an agent acting in the capacity or character of a bailee to carry it to Sevier. It is evident that Holliday had no legal interest in the note, and the principle is well settled, that a beneficial or equitable claimant cannot adopt legal proceedings in his own name. He must have an interest, or possession coupled with an interest. See *Chitty's Pl.* 1, 150; 3d C. P. 2; 2 *Taunton* 374; 6 *Mass. Rep.* 356; 10 *Johnson* 387; 11 *J.* 23. We cannot discover that English had

ever parted with the legal right. A suit, if commenced, must have been in his name. He might not only have released the claim, but payment to him would have been a good defence and resulted in a judgment in favor of Henness. We are, therefore, of opinion that the Circuit Court erred in the instruction given—that the receipt conduced to prove a privity of contract between Holliday and Sevier.

We will now examine into the third count in the declaration, which is in trover. To enable a party to maintain the action of trover, two things are necessary: First, property in the plaintiff; and, second, wrongful conversion in the defendant. The receipt of Sevier, introduced on the trial, shows, conclusively, that the property, as well as the right of possession, was not in Holliday. The presumption, then, from mere possession, must yield to positive proof, though that proof was inadvertently presented by the plaintiff. And this position is clearly sustained in the case of *Sheriff vs. Cadell*, 2 *Espinesses' Cases* 617. The doctrine that title in another is a good defence, is too well settled to be at this period disturbed. See *Kennedy vs. Strong*, 14 *Johnson* 128; *Schemerhorn vs. Van Vicklenburg*, 11 *Johnson* 529; 3 *Starkie*, 14, 87; 2 *Saunders* 47, 873–9; 7 *Term. Rep.* 12. Judgment reversed.

At the same term, TRAPNALL & COCKE, for defendant in error, presented the following petition for rehearing:

The counsel for Holliday respectfully ask of the court a reconsideration and re-argument of the cause. They have carefully examined the opinion pronounced by the court, and are confident it is founded upon a misconception of the grounds of this action. Believing as we do, in the anxious desire of the court to settle right all questions, either of law or fact, which they may be called to adjudicate, we feel the fullest assurance they will cheerfully correct errors, when convinced they have fallen into them. After an attentive examination of the argument of the court, and a mature investigation into the various questions involved in this cause, we retain a confirmed and strengthened conviction of the truth of the position we have assumed; and we are not without hope but what we can demonstrate to the satisfaction of the court, that which appears so evident to our own minds. As the court

Sevier *against* Holliday.

seem to regard the questions which arise in relation to the demurrer, and the motion in arrest of judgment, as furnishing no available grounds in favor of the plaintiff in error, we shall not bestow upon them any further consideration, but pass at once to those points which have mainly influenced the opinion of the court. The decision seems to us to be predicated upon the presumption that the note executed by Henness to English, and which Sevier received of Holliday for collection, is the basis of the suit. This opinion, with due respect, we conceive to be erroneous, and unsupported by any thing which appears on the face of the record. The declaration sets out with clearness and precision the grounds of this action, and we beg leave to incorporate that instrument in this motion, and solicit to it the special attention of the court. It is as follows:

" Peter Holliday, plaintiff in this suit, by his attorney, complains of A. H. Sevier, of a plea of trespass on the case. For that, whereas, the said A. H. Sevier, before, and at the time of the delivery of the note to him as hereinafter next mentioned, was, and thence hitherto has been, and still is an attorney of the Supreme Court and Circuit Courts of this Territory. And whereas, also, the said Peter Holliday, whilst the said A. H. Sevier was such attorney as aforesaid, to wit, in the county of Clark, and within the jurisdiction of this court, on the 14th day of November, A. D. 1825, caused to be delivered to him, the said A. H. Sevier, and the said A. H. Sevier accepted, and then and there received of and from the said Peter Holliday, a certain note of hand, made by one Joshua J. Henness, calling for $133, to bring suit on, recover and collect from the said J. J. Henness, for the use and benefit of the said Peter Holliday, for certain fees and reward to him, the said A. H. Sevier, in that behalf, Yet the said A. H. Sevier, not regarding his duty as such attorney as aforesaid, but contriving, and fraudulently intending craftily, and to defraud and injure the said Peter Holliday in this behalf, did not, nor would not bring suit on, and recover and collect the said note for $133, for the use and benefit of the said Peter Holliday: but on the contrary thereof, he, the said A. H. Sevier, being such attorney as aforesaid, so carelessly and negligently behaved and conducted himself in the premises, that by, and through the careless-

Sevier *against* Holliday.

ness, negligence and default of the said A. H. Sevier, the said $133 have been, and are wholly lost to the said Peter Holliday, to wit, in the county of Clark aforesaid.

And whereas, also, heretofore, to wit, on the 14th day of November, 1825, at the county, and within the jurisdiction aforesaid, the said Peter Holliday caused to be delivered to the said A. H. Sevier, attorney at law, as aforesaid, a certain other note for $133, to him, the said A. H. Sevier, being such attorney as aforesaid, in a reasonable time then next following, to bring suit on it, and the said debt of $133, as aforesaid, recovered and collected of, and from the said J. J. Henness, for the use and benefit of Peter Holliday, as aforesaid, for certain fees and reward to the said A. H. Sevier in that behalf ; and although the said A. H. Sevier, attorney as aforesaid, then and there accepted, and had and received the note aforesaid, for the purpose aforesaid, and undertook to bring suit on the note aforesaid, and to collect the $133, aforesaid, and although a reasonable time to bring suit on, and recover and collect the $133, as aforesaid, hath long since elapsed, yet the said A. H. Sevier, being such attorney as aforesaid, and not regarding his duty in that behalf, but contriving, and fraudulently intending, and to deceive and defraud the said Peter Holliday in this respect, did not, nor would not, within such reasonable time, as aforesaid, or at any time afterwards, although often requested so to do, bring suit on said note, recover and collect the $133, aforesaid, from the said J. J. Henness, as aforesaid, but hath, hitherto, wholly neglected and refused so to do; and by means of the negligent and improper conduct of the said A. H. Sevier, in that behalf, the $133, aforesaid, have not been recovered and collected, and are wholly lost to the said A. H. Sevier, to wit, at the county aforesaid. And whereas, also, heretofore, to wit, on the 14th day of November, 1825, the said Peter Holliday, at the county, and within the jurisdiction aforesaid, was possessed of a certain other note for $133, made by J. J. Henness, and being so possessed thereof, which same note, thereafterwards, on the same day, came to the possession of the said A. H. Sevier, yet the said A. H. Sevier, well knowing the same to be the proper goods and chattels of the said Peter Holliday, and of right to appertain to him, though requested, hath not delivered the

same to the plaintiff, but thereafterwards, on the same day, converted the same to his own use, to the damage of the said Peter Holliday two hundred dollars; and therefore he brings suit."

We ask the court to examine this declaration again, and we think it must be apparent, from the whole tenor of it, that the cause of action is the failure of Sevier to fulfil his engagement, in his character of an attorney, made with Holliday, and to recover the damages he, Holliday, may have sustained from the breach of that contract. The note was only referred to by way of inducement or explanation. It was the subject matter in regard to which the contract was made, and of course the contract itself could not be set out without referring to it. But it is, clearly, not the foundation of this suit. It is true that the equitable owner of a note cannot prosecute a suit against the obligor in his own name, but he must use the name of him in whom the legal interest resides; but when the equitable owner employs an attorney, and binds himself to give him certain fees to prosecute and secure that interest, he is, to that contract, a legal party, and is legally entitled to all the damages he may sustain by its violation. The interest in the contract and the interest in the note are distinct and separate, and the relation in which the equitable owner of the note stands to the obligor in the note is altogether distinct and different from that in which he stands to the attorney with whom he has made the contract for the prosecution of the suit. Had this important distinction been kept steadily in view by the court, we believe the result of this cause must have been materially different. It is owing to this misconception that the court lay down the principle, (right in itself; but not applicable to this action,) " that a beneficial or equitable claimant cannot adopt legal proceedings in his own name." Had Holliday brought suit, in his own name, on the note to enforce the collection of Henness, then the doctrine insisted upon by the court would have been directly applicable. He must have instituted it in the name of English, in whom the legal interest was vested, and not in his own. The court will remark that this action is not upon the note to compel its payment by Henness, but upon the contract between Sevier and Holliday, to recover the damages sustained by the latter by failure of the former to perform his undertaking. To this contract

between the attorney and his client, Holliday is not an equitable, but a legal party; the rights and interests he may have arising out of the contract are legal and not equitable.

It is by improperly complicating and blending together Holliday's interest in this note with his interest in the contract with Sevier, that the court have arrived at the mistaken conclusion that Holliday's interest in his own contract, made by himself, and for himself, is a mere equitable interest. Holliday's interest in this note, and in the engagement with Sevier, are distinct interests, relating to different parties; involving different liabilities, and falling under different rules of legal construction. Holliday and Sevier were parties competent to contract; the subject matter was one in regard to which they had a right to contract; and that they did actually do so, is alleged in the declaration. Is it not, then, manifestly incorrect to say that Holliday can only obtain redress by the use of English's name, for the breach of an engagement, made directly to himself, for his own benefit, and to which engagement there is no evidence that English was a party, or in any way concerned? It is true, to enable Holliday to recover damages upon the trial below, against Sevier, he must have proven that he was entitled to the avails of this note, and that he lost it through the negligence of Sevier. Whether Holliday was or was not entitled to the proceeds of this note is a question of fact to be decided by the jury upon the evidence adduced before them. If he proved that he was entitled to it, and that it might have been recovered, had Sevier prosecuted the suit against Henness in fulfilment of his undertaking, the amount of the note would be the criterion by which the jury would be governed in assessing the damages against Sevier. But if, on the contrary, Holliday failed in proving any interest in the note, any loss by Sevier's delinquency, the jury could not have given him a verdict of damages; for having suffered no injury, he could claim no compensation.

The question then is, is there any thing in the record to repel the presumption that Holliday did adduce proof before the jury establishing to their satisfaction this contract with Sevier, and the injury sustained by his failure to comply with the undertaking on his part? Before discussing this question, we would premise that we are led to

infer, as well from particular passages in the opinion, as from its general tenor, that the court, in examining the record in this cause, have looked to it more with a view of ascertaining whether it contains full and ample testimony of all the facts necessary to establish our demand, than with a view of ascertaining whether it furnishes, in itself, conclusive evidence that the jury and court below erred. This distinction is material, and exercises an important influence upon the practical result of this cause.

If the court, in the investigation of this subject, have proceeded in any degree under the belief that it was necessary to entitle us to an affirmance of the judgment below, that our claim, and the evidence adduced in support of it, should be shown on the record before this court, with all the fulness and precision requisite to establish it in the first instance before the inferior court, we would then say that such a rule, according to our understanding of the authorities, is in direct violation of those principles of practice which have been long and well settled in the courts of England, and in our own county. The rule is firmly fixed, that the party who impeaches the validity of the judgment below, must show, affirmatively, on the record, such facts as prove conclusively that the court erred, or the appellate court will presume its judgment to have been correct. *See Hodges vs. Biggs*, 2 *Marshall* 222, *Com. Dig. Ul.; 1 Peters C. R.* 326. An appellate tribunal never presumes any thing in favor of him who arraigns the justice and legality of the judgment below. They will even presume the court and jury have done right until the contrary appears. The attitude of the parties before this court is materially changed from what it was before the circuit court. There the *onus probandi* was upon Holliday; he was bound to furnish to the court and jury such proofs in support of his claim as would satisfy them of his legal right to recover. He did so. Sevier, in appealing from that decision, takes upon himself the *onus probandi* before this court. He, as plaintiff here, must establish, not by presumption and conjecture, but by a direct and positive showing, that the judgment was illegal and unauthorized, before he can overthrow it. Has he done so? We confidently affirm not; and the court can only arrive at that conclusion by presumption in favor of Sevier, (who has now no right to their favor

in this respect,) and that too, as we firmly believe, not warranted by any thing in the bill of exceptions. The court say, " we are author- ized to look into the whole record, and from the circumstances under which the receipt was admitted, and the language used in the bills of exception, to judge whether there was any other evidence calcu- lated to change the attitude of the parties in the question before us. We have directed our attention to this point, and are necessarily brought to the conclusion that there was not." What those " circum- stances" were, and what the " language used in the bills of excep- tion" which " necessarily brought the mind of the court" to this con- clusion, they have not thought proper to specify. This is a point of the very first importance in the decision of this cause, and it is diffi- cult to remove objections stated in terms so general and indefinite. We have examined the bills of exception with all the critical acumen with which we are endowed, and can see nothing in " the circumstan- ces under which the receipt was admitted," and nothing in the lan- guage of these bills to warrant the inference that there was no other evidence in the cause calculated to change the attitude of par- ties in this question.

We beg leave here to insert those bills of exception, with such re- marks as we deem necessary to place them in their true light in this cause. They are as follows:

" Be it remembered that, upon the trial of this cause, the plaintiff offered, in evidence, a receipt, the signature to which was proved to be in the hand writing of A. H. Sevier, in the words and figures fol- lowing, to wit:

" 'Received of Peter Holliday one note of one hundred and thirty- three dollars against Joshua J. Henness, drawn in favor of William English. This 14th November, 1825. A. H. Sevier.'

" To which evidence the defendant objected, and the court over- ruled the said objection, and admitted said receipt to be given in evi- dence to the jury; to which opinion of the court the defendant excepts, and prays that his bill of exceptions may be signed, sealed, and enrolled."

2d bill. " Be it remembered that, on the trial of the above suit, the counsel for the parties in the suit having differed in their state-

ments of the opinion given by the court as to the receipt executed by the defendant, the court said that the receipt was evidence conducing to prove a privity of contract between the plaintiff and the defendant; to which opinion of the court the defendant, by his counsel, excepts, and prays that his bill of exceptions may be signed, sealed, and made a part of this record."

The first bill contains nothing more than an exception to the admission in evidence of the receipt given by Sevier to Holliday. The second contains nothing more than an exception to the instructions of the court in regard to the legal effect of the receipt, and from this the court draws the inference that there could have been no other material evidence in the case. How an exception to the admission of a single fact, and the instructions of the court in regard to the effect of that fact, can close the door upon all presumption that there was other material evidence in the cause, we cannot perceive. We would emphatically ask how and in what way it is that an exception to a single fact necessarily excludes the presumption of more testimony, when the bill of exceptions does not say it contains all? Does not the experience of every day's practice conclusively refute such a supposition? An objection is only made to the admission of testimony when the party objecting denies that it is legally pertinent to the issue. But where the evidence is obviously legal, and relevant to the issue, bills of exception are never taken. And will the court say, because the counsel for Sevier objected to the introduction of this receipt, as illegal evidence and irrelevant to the issue, that it must "necessarily" follow that Holliday did not and could not introduce any that was. With due deference to this court, we would suggest that such a conclusion would reverse the well settled law of presumptions, which are always indulged in favor, and never against the verdict and judgment below. The only object sought to be obtained by the plaintiff in error, in taking those exceptions, was to test the question whether or not this receipt was legal evidence to the jury. This is the only question to which it can legitimately give rise. The court have, however, given it a different effect, a broader operation, and raised upon it the presumption "that there was no other evidence calculated to change the attitude of the parties in the question before them." We

will, however, waive, for the present, any further discussion of this branch of the subject, that we may take up, in an orderly and methodical manner, the questions which arise out of these bills of exception.

The first is, did the court err in admitting this receipt in evidence?

Second. Did the court err in regard to the effect of the receipt?

And thirdly. Does the language of the bills of exceptions preclude the presumption that other evidence was adduced on the trial below?

In discussing the first proposition it is necessary that we should again direct the attention of the court to the objects of this suit; to the basis on which the action is founded; and to the relationship existing between the parties to it. This is an action on the case for the tortious breach of a contract made between Holliday and Sevier, and to recover the damages Holliday asserts he has sustained by the failure of Sevier to perform that contract. It is not to enforce the collection of the note of Henness, but to make Sevier responsible, upon his own contract, for failing to do that which, " for certain fees and rewards," he had obliged himself to Holliday to do. This contract, then, is the basis of this action. It is the tie which binds the parties together, and establishes that privity and relationship between them which give to the one a remedy against the other for any breach thereof. It was necessary, therefore, to enable Holliday to maintain his action, that he should, upon the threshold of the trial, prove the existence of this contract; without this proof he could not advance one step in the progress of his suit. That point was first to be established before he could enter on the question of damages. What, then, are the terms and nature of the contract which Holliday alleges he made with Sevier, and for the breach of which he instituted this suit? It is distinctly set out in the declaration in the following words: " A. H. Sevier accepted and received of and from the said Peter Holliday a certain note of hand made by one Joshua J. Henness, calling for one hundred and thirty-three dollars, to bring suit on, recover and collect of and from the said Henness, for the use and benefit of the said Peter Holliday, for certain fees and rewards." This receipt was introduced as evidence conducing to prove this contract,

and the privity between the parties. The question then is, does it so conduce? If it does, the court were clearly right in admitting it in evidence, and in the instructions they gave the jury in regard to it. By this receipt Sevier acknowledges that he received of Holliday a note on Joshua J. Henness for $133. Neither the court in their opinion, nor the plaintiff's counsel in their argument, have ever doubted for a moment but that the note alluded to in the declaration was the same for which the receipt was given. If so, does it not establish a material part of the contract set out in the declaration, one of the essential parts of which is that Sevier did not receive this note of Holliday? If, then, he had failed to prove this fact, he would not have made out his contract, and Sevier could not have been made responsible. The omission of so material a circumstance would have been seized upon by the learned and astute counsel for Sevier, and turned upon us with fatal effect. Since this, then, was an important fact to be proven, what better evidence could there be than the written acknowledgment of Sevier himself ? It is proof of the most direct and positive character. And if the court erred in their instructions, it was not in violation of the rights of Sevier, but of Holliday, in giving to this receipt a more limited effect than of right belonged to it. If this receipt proves, as we think we have demonstrated it does, a fact material to make out the contract in support of this action, the correctness of the instructions given by the court follow as a necessary consequence. The terms used by the court in conveying those instructions show the Judge was fastidiously cautious in not giving to the receipt too strong an effect upon the minds of the jury. He merely says that it conduces to prove a privity of contract; evidently implying that it was not conclusive evidence of the facts, and that more proof was necessary to establish this privity conclusively. Since, then, the jury found for Holliday, is not the inference strong that additional testimony was adduced, which did satisfy them of the privity of contract between the parties? It is, however, insisted, inasmuch as the receipt shows the note was drawn payable to English, and not to Holliday, that the action against Sevier should have been brought in the name of English. If this was an action against Henness, founded upon the note, this principle might be correct, but it

Sevier *against* Holliday.

can certainly have no application to this case. Holliday is not here suing upon a contract made by English. He is suing upon his own contract, and seeking redress for an injury done to himself, and not to English. Will the court say that Holliday has no right to institute a suit in his own name, upon his own contract? That he must resort to the name of English to obtain a remedy for the breach of an agreement to which English was no party, and in which he had no interest? I again repeat, and hope the court will bear the distinction in mind, that although the interest of Holliday in the subject matter, in regard to which the contract was made, may have been only equitable, yet the interest in the contract itself is purely legal, and he has a legal right to the damages sustained by the non-performance of it. This note forms no part of the consideration for the contract between the parties. The professional skill of Sevier on the one hand, and the fees and reward to be given by Holliday on the other, form the consideration on which the contract is founded. If Sevier withheld those services, whereby Holliday was greatly injured, has he no remedy? We believe, upon a careful revision of this cause, the court will perceive that the principles of law relied on by them, and the authorities cited, relate alone to the suit against Henness on the note, and cannot apply to the facts before them. Let us illustrate the case by an example, which may relieve the case of all embarrassment, and present its true points in a simple and tangible form. A gives his note to B for $100; B, being unwilling to endorse the solvency of A, sells it to C, and passes it without assignment; A refuses to pay, and C contracts with a lawyer for the collection. The court, if we rightly understand the effect of their decision, establish the principle that C cannot sue the lawyer for a breach of this contract made with himself alone, but that the suit must be instituted in the name of B, who has the legal interest in the note. Is it not evident that they constitute two different engagements, between two different parties, to which different liabilities attach? The privity of contract is between C and his lawyer. He has engaged his services, and the duty to be performed is for his benefit. Suppose, for a moment, the lawyer had performed his duty and discharged his obligation, to whom would he look for his fees? To B? Certainly not; for B has made no contract

with him, and has no interest in the services to be performed by him. The contract was with C. The contract to pay for his services was made by C; and if he failed to do so, the attorney would have a right of action to compel the payment. Although the lawyer would have his legal redress against the client for a breach of the contract, yet, by the decision of the court, the client would be without his remedy against the lawyer, unless, forsooth, he would institute his suit in the name of another no way connected with the transaction. Such a rule would at once destroy that reciprocity which accompanies all contracts, and constitutes a part of their very essence; the reciprocal obligation is at once severed, and a redress given to the one party for a violation of their mutual agreement, which is denied to the other. This surely cannot be consistent with the spirit of the law, which, in its stern and unbending justice, knows no partialities, and respects no persons.

We will now proceed to the third question. Does the language of the bills of exception preclude the presumption that other evidence was introduced on the trial below? We say it does not. The bills of exception do not profess to set out all the evidence in the cause. The exceptions are confined to the admission of a particular paper in evidence, and the correctness of the instructions of the court as to the effect of that paper. They no where assert that this was all the proof, nor have we been able, after the most careful and anxious examination, to trace one single line which conveys even a distant intimation to that effect. A single fact is excepted to, and the court say it excludes all presumption of more proof. To create this presumption, the bills of exceptions must not only set forth all the testimony, but must, in addition, expressly declare on its face that it has done so. In *Frazier vs. Harris*, 2 *Littell*, 182, the principle here asserted is broadly laid down; the language is, (we quote from the margin,) " when a bill of exceptions to the decision of the inferior court, refusing to give to the jury the instructions asked, does not state that the evidence detailed in the bill of exceptions was all the evidence given, the Court of Appeals will presume that other evidence, and sufficient to justify the decision of the inferior court, was given." In 5 *Littell*, 221, *Smith vs. Morrow*, the same principle is affirmed. In the case of *Fonk vs. Darnell, page*

317, *of the same volume*, the court say, "we observe the bill of exceptions here taken, although it gives us a long history of the testimony, does not declare that it contains the whole of it, and therefore we cannot presume that the court below did wrong." Were it necessary, we might multiply authorities on this point; those to which we have referred bear directly upon it and are conclusive. In the case last cited, the bill of exceptions gives a long history of the testimony, but because it did not declare it contained the whole, the appellate court refuse to admit the court below did wrong. The bills in the case before us only set out a single fact, and no where assert that this was all; yet the court declare they are necessarily brought to the conclusion there was no more; and upon this ground reverse the judgment below. We ask the court to pause and carefully review their decision, with the light of those authorities beaming upon it, and we feel convinced they will correct the error into which we are constrained to believe they have fallen. We trust the court will not disturb and unsettle principles so long and firmly engrafted into our system of judicial practice. Innovations upon established rules should ever be cautiously made, and never unless experience has proven them to be unjust and oppressive. But the rule which we respectfully conceive the court have violated in this instance is as strongly recommended by good sense and sound policy as it is clearly supported by precedent and authority. Bills of exception, being always signed and certified by the Judge before whom they are taken, if they declare on their face they embrace all the evidence, the appellate court can act with a full assurance that they have all the facts before them, and if error has been committed they can rectify it. But where they have not this assurance they cannot know that all the facts are reported, and they will not, therefore, take upon themselves to say that the judgment was wrong; for the proof, from all they can know, may have been amply sufficient to warrant the finding of the jury and the judgment of the court. The firmly established rule of law, recognized by the highest English and American authorities, is, that the court, after verdict, will presume every fact to be proven, necessary to establish the plaintiff's demand. "After verdict," says *Chitty, page* 404, *margin*, "if the issue joined be such as necessarily to require, on the trial, proof

67

of the facts defectively or imperfectly stated, or omitted, and without which it is not to be presumed that the Judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by verdict at common law ; in short, the court will infer almost any thing after verdict." Now what is the issue joined here, and what proof would be necessarily required on the trial to warrant the Judge in directing the jury, or the jury in giving a verdict for Holliday ? The declaration sets out a contract between the plaintiff and defendant, by virtue of which the latter agreed to accept, and did receive of the former, a note on J. J. Henness for $133, to collect for his use and benefit, and asserts defendant did not comply with his engagement, whereby plaintiff was damaged, &c., &c. To this, Sevier has pleaded not guilty, which puts directly in issue each one of those facts. To enable the plaintiff, then, to recover, he must have proven, first, the existence of the contract as alleged; 2ndly, that this note was actually passed to Sevier; 3rdly, that it was to be collected for his benefit, and that he was the person who had actually suffered the damage. All these circumstances, the court must now presume, were proven; they are material to the issue joined, and without proof of them it cannot be supposed the Judge would have directed, or the jury have given a verdict for Holliday. For further authorities in regard to presumptions after verdict, we refer the court to 1 *Peters C. R.* 326; 1 *Marshall* 106; *Comyn's Digest; 2 Marshall* 254, *and* 222. In the latter case, the principle upon which the court acted, is, " that the party excepting, should spread the testimony on the record; failing to do so, every intendment will be indulged in favor of the judgment below." In *Roe vs. Haugh*, (3 *Salk. p.* 15, *marg.*,) the court expressly say, " they ought to do what they could to help the verdict." We would now respectfully ask the court, have they, in their decision, given to us the benefit of these presumptions, to which all the authorities, in the most decisive and emphatic language, declare we are entitled? Have they done what they could do to help the verdict? After a careful examination of their decision, we are constrained to say, we believe they have not; on the contrary, we cannot but regard their decision as resting upon a series of presumptions against the verdict, neither authorized by the rules of law

or any thing contained in the record.   The court ask, " is there any evidence that the legal interest, at the time Sevier received the note, or at any subsequent period, was in Holliday?"   Since the bill of exceptions does not contain all the evidence, how is it that the court draw the inference that no such proof was made before the jury?   The legal presumptions, we have shown, incline the other way.   The receipt only shows that the note was drawn by Henness, payable to English; this might be true, and yet Holliday might have adduced evidence, on the trial, of an assignment; this supposition is not at all repugnant to, or inconsistent with the fact stated in the receipt.   While it is fortified by the fact that Holliday was in possession of the note; that he contracted with Sevier for its collection, and was responsible to him for his fees; and that Sevier receipted directly to him and not to English for it.   Again, the court say, " does the receipt prove that he had either a legal or beneficial interest?"   Is it not here again obvious that the court are limiting our evidence to this receipt, and denying us the benefit of those legal presumptions, which now of right belong to us? The counsel for Sevier has omitted, in his bills of exception, the evidence we adduced in support of this branch of our cause, and are we to be prejudiced by his omissions?   If the proofs we adduced did not establish this fact, why did he not report it?   This court could then have judged of its sufficiency.   Having failed to do so, this court will now presume it was sufficient, since the court below have decided it to be so.   The bills of exception prove that the receipt was introduced, not to prove the nature of Holliday's interest in the note, but to establish the privity of contract between Sevier and Holliday.   That it did establish the privity, and fulfil the purposes of its introduction, we think we have already sufficiently demonstrated.   The receipt should, therefore, not be held responsible for not proving a fact, it was never introduced to prove; nor can we, by any process of sound reasoning, be concluded from the presumption of proof establishing other points, because the defendant has thought proper only to except to, and report the evidence upon, one.

The question is, is the receipt so directly repugnant to the supposition of a legal or beneficial interest in Holliday to the note, as to exclude, necessarily, all presumption of proof supporting these facts?

We have shown it is not. And the court, instead of presuming against the verdict, should do what they could to help it. The legal intendment is, *that* every fact necessary to support the verdict was proven on the trial. We again repeat that, unless Holliday adduced evidence of either a legal or equitable interest in the note, he could not have recovered against Sevier. The jury could not have given him a verdict for damages, unless he proved some injury sustained. The court proceed to say, " if, then, he had no legal, beneficial or equitable interest in the note, how is the privity raised?" But how, we would ask, does the court arrive at the conclusion that Holliday had no legal, beneficial or equitable interest in the note? The court does not inform us, and we believe there is no portion of the record that would sanction this deduction upon any principles, or just legal construction. Suppose we concede, for the sake of the argument, that the bill of exceptions contains no evidence that Holliday had either a legal or equitable interest, will that justify the court in assuming that no such testimony was given on the trial? The bills of exception do not state that they contain all the evidence; and the rule in such a case, is that the court will infer there was more proof.

The books say, after verdict, the court will presume almost every thing in favor of the verdict; that they will do what they can to help it. Yet the court here cut us off from all those presumptions, and transfer them to the other party; who, by no rule of law, is entitled to them. The court go on to say, " it is only by the one presumption that the note was received of him, repelled by the still stronger presumption that he was but an agent, acting in the capacity or character of a bailee, to carry the note to Sevier." The court having, by interrogatories and assumptions, arrived at the decision, that Holliday had no legal or beneficial interest, they continue to pursue those presumptions until they reach the conclusion that he was a mere bailee to carry this note to Sevier; but by what evidence in the cause this fact is established, by what process of reasoning this conclusion is made out, we confess we are unable to perceive. We would respectfully ask the court, is it true that, to establish Holliday's legal or beneficial interest in this note, we have only " the one presumption, that it was received of him?" On the contrary, we believe there are many other

Sevier *against* Holliday.

and conclusive legal presumptions in our favor, founded upon rules of practice which have become fixtures in our system of jurisprudence, and recognized and acted upon by all the courts in every country where the common law prevails. In addition to the presumptions conceded to us by the court, we have the presumption of more proof before the jury, since the bill of exceptions does not declare that it contains all. We have the presumption, arising from the fact, that when Sevier received this note, he receipted directly to Holliday for it, and not to English. We have a right to all these presumptions, after verdict; which the court are bound to make in support of the verdict. We have a right to expect the Supreme Court will presume in favor of the judgment below, unless it is shown, affirmatively, on the record, to be wrong. Under these two last heads, we have a right to raise presumptions in favor of the proof of each individual fact upon the trial, necessarily required to authorize the Judge to direct, or the jury to give, a verdict for us.

Other courts " will infer almost every thing after verdict, and expressly declare they must do what they can to help it." But this court, unless we have mistaken the effect of their decision, seems to have acted on the principle, that they ought to infer every thing against the verdict, and reverse, unless it appears, affirmatively, on the record to be right. Does the record show any equitable considerations in favor of Sevier, which should induce the court to relax those rules to shelter him from liability? We affirm it does not. We have the evidence of twelve sworn jurors. We have the judgment of the court, that the testimony on the trial proved Sevier to have violated his contract, and that Holliday had, in consequence thereof, entirely lost the amount of this note. This court has not all the evidence before them, upon which the court and jury below predicated their judgment, and will they presume it all wrong? That Holliday was a mere bailee, without any legal or beneficial interest? Although the jury found damages for Holliday and the court approved their verdict? Yet we are, in substance, told the presumption must now be that the proof before them showed that English, and not Holliday, was the person damnified by the delinquency of Sevier. If this receipt, *ex vi termini*, operated as an estoppel against Holliday; if, in

its terms or legal effect, it directly and positively precluded all suppo-
sition of farther evidence before the jury, and excluded Holliday from
adducing evidence to show a legal or equitable interest in the note,
the court might then plausibly infer that the door to all these pre-
sumptions was closed upon us finally and forever. But the receipt
does not do this. Its terms are not inconsistent with, or opposed to
the supposition of evidence establishing Holliday's property in the
note. Although it was payable to English, it may have been as-
signed to Holliday, or he may have acquired, by its delivery, a right
to its proceeds; the two facts may co-exist and both be true. If the
law was, that a note drawn by one person in favor of another, could
not be assigned, or in any way transferred to a third, so as to vest in
him a legal or equitable interest, then the presumption for which we
contend would be repugnant to the fact disclosed by the receipt, and
the court would do right in excluding them. But this, the court well
know, is not the law of assignments. The court again say, " it is
evident Holliday had no legal interest in the note, and the principle
is well settled, that a beneficial or equitable claimant cannot adopt
legal proceedings in his own name." But is he not a legal party,
and has he not a legal interest in his own contract, made with Sevier?
Is it not manifest that the court are again blending this action against
Sevier for a tortious breach of his own contract with Holliday, with
the suit on the note against Henness, and applying to the former the
rules of proceeding which belong alone to the latter? We have, in
another part of this argument, labored to dissolve the connection be-
tween these suits, and to show the attitude in which the parties re-
spectively stand in regard to them; and again beg leave to impress
upon the court the importance of maintaining this distinction. The
court say, " we cannot perceive that English had ever parted with his
legal right." Is there any thing to show he has not? And is not this
suggestion evidently predicated upon the ground that the court ought
to presume every thing for Sevier, and against the verdict? The
bills of exception here are the plaintiff's bills; and admit, for the sake
of the argument, he has incorporated into them all the evidence on
the trial, it was his duty to have shown that fact, conclusively, on the
face, or expose himself to all the presumptions, to his prejudice,

which the fixed rules of law would raise against him. But the omission and mismanagement of plaintiff's counsel, in this respect, has been visited upon us by the court, and not upon the party upon whom it should rightfully have fallen.

There is another important consesequence that must result from the decision of the court. If English should institute a suit, (and the court intimate he is the proper person to do so,) he would have to prove that Holliday was his agent in making the contract with Sevier, and that he had never parted with the note. Now the court are bound to presume, as we have shown, in support of the verdict, that it was proven that Holliday made the contract for himself, and not for English; and that the injury, by the breach thereof, was to him and not to English. If these facts were proven, English would be defeated in his action, and the result would be this, Holliday could not recover because he held only an equitable interest in the note, and English could not recover because he had made no contract with Sevier, and there was no privity between them; and Sevier, although undeniably liable for the breach of his contract, as established by the verdict of twelve honest men and the judgment of the court, would be shielded from all legal responsibility.

In the conclusion of their opinion, the court take up the count in trover, and assuming that the receipt was all the evidence in the case, they argue, from thence, the plaintiff had no right to recover on this count. The law laid down by the court will not be controverted. That on this count two things must be proved: 1st, property in the plaintiff; 2d, conversion by the defendant. In this count the court will remark, that the plaintiff is not suing to recover the proceeds of the note, but the note itself, the mere paper. If English did transfer it to Holliday, either by a written assignment or by a mere delivery, he has clearly a legal right to the possession, and can maintain this action to regain it. The intendment of law is, as we have again and again shown, that this transfer was made. Without having all the evidence of the jury before them, would it not be a reflection upon the jury and court below for this court to presume that the one would give a verdict and the other a judgment against Sevier, and in favor

of Holliday, who, himself, shewed, upon the trial, that he had neither the property or right of possession. Some respect is certainly due to the intelligence and integrity of the constituted authorities of the country; and where this court have not before them all the lights, by which their judgment was directed, they should ever presume they have discharged their duties aright. As to the claim against Henness, Holliday's interest may have been an equitable one, but as to the paper itself, he had a legal right, and therefore could maintain his action.

We are conscious that we have protracted this argument somewhat beyond the usual length. Believing, as we do, that the decision of the court is in violation of well established principles of law, and subversive of the rights and interests of our client, we have not been willing to abandon this cause without one more earnest effort; and we trust, that after the court have given to the questions, here involved, a mature and careful revision, this effort will not have been made in vain.

For further authority in regard to presumptions, after verdict, we refer to the case of *Fisher vs. Eason*, 1 *Ark.* 90.

And the prayer of the petition being granted, and the case opened for argument, it was argued at this term by

Pike, for plaintiff in error:

The defendant in error contends that all the defects in the declaration were cured by the withdrawal of the demurrer to it, after its being overruled—that if not so, still all the defects are such as are cured by a verdict—and that the court below was right in admitting the receipt, and stating that it conduced to prove a privity of contract between Sevier and Holliday—and the court having admitted the two first positions in his favor, and decided against him in the last, he now claims a rehearing.

In order to ascertain whether the decision of this court be correct, we propose to examine all the questions legitimately presented by the record. In doing so, we shall pass by many questions heretofore argued in the case, and admit many positions heretofore disputed, and

Sevier *against* Holliday.

attempt to show that the declaration in the case is so defective that no *general* verdict can be sustained upon it.

The case has been long before this court, so long that it hath the aspect of antiquity. Justice would be mocked at for its delay, if it were longer continued upon the records of this court undetermined. It hath long sustained here a precarious existence, and being now on the verge of dissolution, let its obsequies be decently performed.

And if it should appear, or seem probable, (for appear it cannot,) that the defendant in error ought in justice to have recovered from Sevier, but has failed, or must fail, because his attorney did not present his demand by a competent declaration, the law will not be blamed, nor will this court.

The first question presented, therefore, is, what effect was produced upon the defendant's case, by his withdrawal of his demurrer, after it was overruled by the court below? An examination of this question will, of course, include an exposition of certain principles, which the court, in deciding this case, held it unnecessary to enunciate or apply to the facts, having decided upon another point.

The doctrine laid down by the counsel for Holliday, in their original brief, is unquestionably correct, as quoted from 2 *Tidd.* 825, that "after judgment on demurrer there can be no motion in arrest of judgment for any exception that might have been taken on arguing the demurrer." And the reason assigned is no less cogent, and consistent too with the uniform principles of the common law. It is that "the matter of law having been already settled by the solemn determination of the court, they will not afterwards suffer any one to come as *amicus curiae* and tell them that the judgment which they gave on mature deliberation, is wrong." The meaning of the reference to any person coming as *amicus curiae,* is, that at common law, after verdict, the defendant had a day given him to move in arrest of judgment; and if, at such day, he made default, then any body, as *amicus curiae,* might move in arrest of judgment such matter as the party himself might have pleaded. *Smith vs. Harmon,* 6 *Mod.* 143; see *Edwards vs. Blunt,* 1 *Str.* 425.

The Kentucky courts have decided also, in broad and sweeping terms, that a withdrawal of a demurrer supersedes the judgment upon

68

it, as completely as if it had never been filed, or a judgment given thereon.    *Trigg vs. Shields, Hardin,* 169; and that where a defendant withdraws his demurrer, and pleads over, he waives his right to insist upon the error in overruling the demurrer.    *Stockdon vs. Bayless,* 2 *Bibb,* 62.

It may be doubted whether the principle so broadly stated in these cases is correct to its whole apparent extent; and whether, as stated, it has that accuracy and certainty which render judicial decisions valuable as guides for other courts.    Taking it according to its strict letter, as enunciated by the Kentucky courts, and so it is interpreted and applied by the counsel for Holliday in this case, and it means that no matter how defective the declaration may be, no matter if in it the plaintiff shows no title or right of action whatever, still, if the defendant demurs to it, and, his demurrer being overruled, withdraws it, he is utterly precluded, first, from moving in arrest of judgment for any defect in the declaration; and second, from having any benefit of the error of the court below in giving judgment against him upon such a declaration.    This certainly is a most singular doctrine, and a conclusion not to be arrived at, unless for reasons exceedingly stringent and binding upon the court.

What effect ought the withdrawal of a demurrer to have as to waiving errors?    In what situation is the party left who withdraws his demurrer?    Undoubtedly, reason, and the general principles and *modus operandi* of the law would dictate the answer, that he should be in the same situation as if he had never filed his demurrer—and should no longer be able to object to any defects in the declaration which would have been cured if he had pleaded to it without demurring.    Any other doctrine would produce the most preposterous consequences.    A demurrer withdrawn, is the same as no demurrer put in—and the difference between withdrawing and holding by the demurrer is, that if the party rested upon his demurrer he might have the advantage of many errors which are cured by pleading over and by a verdict.

If therefore the Kentucky decisions had said that where a party withdraws his demurrer, he stands in the same attitude as if he had never demurred, and loses the benefit of all exceptions to the pleading

demurred to, which are cured by responding to it, without demurring, and by a verdict, the decision would undoubtedly have been correct. And the principle, as stated in *Hardin*, does in fact amount to the same thing—that "the withdrawal of a demurrer supersedes the demurrer and the judgment given upon it, as completely as if none had been filed, or any opinion given upon it."

Thus in *Creswell vs. Packham*, 6 *Taunt.* 631, where there were several counts in the declaration, some good and some bad, the defendant demurred generally, and his demurrer was of course overruled. After a writ of enquiry was executed he moved in arrest of judgment, because there being some good and some bad counts, the damages had been assessed generally. The court, following the decision in *Edwards vs. Blunt*, said, "where the defendant might, on arguing the demurrer, have availed himself of the exception, he shall not afterwards move in arrest of judgment. The defendant might have taken this exception, in substance, on the demurrer, for he might have objected to the vitious counts, and having obtained judgment on them, no damages could ever have been assessed thereon. *And he is not without remedy by writ of error. It is more convenient to adhere to that practice, than to indulge the defendant with relief now on motion.*"

That case is exactly in point. We claim that in this case there are two bad counts, at least; and that a general verdict has been given—and therefore, according to the case just quoted, although we were not entitled to relief on our motion in arrest, yet "*we are not without remedy in error.*" We do not claim that the court below erred in overruling our demurrer. We do not claim that it erred in overruling our motion in arrest of judgment, but we aver, which is the common assignment of error in law, that the declaration is insufficient in law to support the judgment; and that the judgment was rendered for the plaintiff instead of the defendant. *Howe*, 481.

That the principle is perfectly well established that where there are some good and some bad counts, and a general verdict, the judgment must be reversed, see, *Candler vs. Rositer*, 10 *Wend.* 492; *Dryden vs. Dryden*, 9 *Pick.* 547; *Backus vs. Richardson*, 5 *J. R.* 476; *Cheetham*

*vs. Tillotson, ib.* 430; *Eddowes vs. Hopkins, Doug.* 376; *Clark vs. Lamb,* 6 *Pick.* 516.

These principles being established, two questions then arise and present themselves for determination: *First,* what errors and defects exist in the declaration apparent on the record? and *second,* are those defects of such a nature that they are cured by pleading to the declaration, or by a verdict?

Without referring to some of the objections taken to the counts heretofore, we remark that the first count alleges, that Holliday caused to be delivered to Sevier, and Sevier accepted and received from him " a certain note of hand made by one Joshua J. Henniss, calling for one hundred and thirty-three dollars, *to bring suit on,* recover and collect of and from the said Joshua J. Henniss, *for the use and benefit of Holliday,* for certain fees and reward *to him the said Sevier in that behalf.*"

The objections which we make to this court are,

1st. That it does not state that Henniss was legally liable on the note, or that it contained any promise to pay any sum of money.

2nd. That it does not state to whom the note was payable.

3rd. That it does not show any title in Holliday to the note, inasmuch as it neither states that it was payable to, or endorsed to him, or delivered to him in any way.

4th. That it contains no statement of any promise or undertaking by Sevier to sue on and collect the note, and therefore, neither expressly or by implication states any obligation upon him to do so; and

5th. That it contains no statement, in legal language, or in effect, that Sevier was to receive any fee or reward for so doing, or if so, by whom the fee or reward was to be paid; and consequently no consideration is stated for any undertaking of Sevier, even if any undertaking was stated. We shall hereafter discuss these defects.

We object to the second count. It states that Holliday caused to be delivered to Sevier, as attorney, a certain other note for one hundred and thirty-three dollars, "to him the said *Ambrose H. Sevier,* being such attorney as aforesaid, in a reasonable time then next following suit brought on it, and the said debt of one hundred and thirty-

Sevier *against* Holliday.

three dollars as aforesaid recovered and collected" of and from said Henniss, for the use and benefit of said Holliday, " for certain fees and reward to the said Sevier in that behalf;" and that although Sevier " accepted and had and received the note aforesaid, and undertook to bring suit on the note aforesaid," and to recover and collect the one hundred and thirty-three dollars as aforesaid, and although a reasonable time has elapsed, &c.

This count is still more radically defective. In fact it has hardly the semblance of a count, and contains hardly a single allegation from which any liability could be inferred. It is utterly incoherent, and contains no statement of any cause of action. More particularly, it is defective, because, first, it does not state by whom, or to whom the note was executed: second, it states no title in Holliday to the note, not even that it ever was in his possession; no title in him either as payee, endorsee, or holder: and third, that there is the same defect as to a statement of consideration as in the first count.

We will now proceed to examine as to what defects are not cured after verdict, and apply the rules, so ascertained, to the objections above stated. The court having decided that the plaintiff himself disproved his count in trover, we do not raise any question on that count, although it should, undoubtedly, have been declared bad on demurrer, for want of the allegation that the plaintiff was possessed of the note as of his own proper goods; *Jones vs. Wuickworth, Hardres iii;* for want of a sufficient description of the note, and for want of a positive statement of the value of the note: 4 *B. & A.* 271; and is probably bad on error.

Let us see, then, what defects are not cured by pleading in chief or by verdict. The subject, as well in regard to what defects were cured at common law, and what by the statutes of jeofails, is learnedly discussed by Mr. Sergeant Williams, in his note to *Stennel vs. Hogg,* 1 *Saund. R.* 228, *A. B. and C.*

The principle which he first lays down, and which is material to our guidance, is, " that where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection on demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defect-

ively or imperfectly stated, or omitted, and without which it is not to be presumed that either the Judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission, is cured by the verdict, by the common law."

The application and extent of general rules like this, can only be learned or understood from particular cases. There is generally, if not always, something indefinite in general rules, couched in general language; and it will therefore be necessary to examine certain cases elucidating this rule.

Where the declaration stated that the defendant had sold to the plaintiff all the furzes *growing* on certain land, to be taken before a certain time, and promised that he should enjoy and carry away the furzes without disturbance; and although defendant had permitted him to carry away fifty loads of furzes, yet he did not permit him to enjoy all, *according to his promise*, but disturbed him from taking away a thousand loads, *which were growing upon the lands at the time of the promise.* Plea, *non assumpsit*, verdict and judgment. The error assigned was, because the declaration did not state the time of disturbance, nor show that it was before the time fixed for carrying them away. The court held, that after verdict, it should be intended that it was within the time, otherwise there had been no cause to have damages—and it was not material that the time of disturbance should be alleged; *for it was collateral to the promise. Hall vs. Marshall, Cro. Car.* 497.

So where the bargainee of a reversion brings debt for rent, and alleges no attornment by the tenant to him, the omission is cured after verdict. *Hitchin vs. Stevens, Sir T. Ray.* 487; *S. C.* 2 *Shower* 233. In this case *the grant of the reversion* was alleged, and there could have been no such grant without attornment. So in the former case, the allegation that " the defendant did not permit him to enjoy the furzes *according to promise*," included in fact an affirmative that he disturbed him before the time. And this brings us to the case of *Spiere's vs. Parker*, 1 *T. R.* 145, where the rule is clearly laid down by BULLER, Judge. "After verdict," said he, " nothing is to be presumed but what is *expressly stated* in the declaration, or what is necessarily implied from those facts which are stated. That is the case where a

Sevier *against* Holliday.

*feoffment* is pleaded without *livery*. A livery is always implied, *because* it makes a necessary part of a feoffment." That is, where the *whole* is stated to exist, the existence of *the parts* is implied—and if the *chain* is stated to exist, the existence of *the links* will be implied. He says that he knows of no decision against this rule: and mentions, as the only authority against it a dictum of Lord HARDWICKE, in *Wicker vs. Norris, Cas. Temp. Hard.* 116, where he says that a certain fact must be presumed to have been proved at the trial, *because otherwise the jury could not have found at all.* And although what BULLER called a dictum of HARDWICKE appears by the report itself to have been the judgment of the whole court, and is supported by some of the older cases, still it is now settled not to be law to its full extent. In fact, if it were, a writ of error could never be supported, for any defect in the declaration whatever, after verdict. Thus in *Rushton vs. Aspinall, Doug.* 653, Lord MANSFIELD denied the rule to be correct to that extent ; and laid down the true rule—that " where the plaintiff has stated his title, or ground of action *defectively* or *inaccurately*—because, to entitle him to recover, all *circumstances* necessary, in form or substance, to complete the title, so imperfectly stated, must be proved at the trial—it is a fair presumption after verdict, that they were proved; but where the plaintiff totally omits to state his title or cause of action, it need not be proved at the trial; and, therefore, there is no room for presumption." And again he said, " if they *were* to be presumed to be proved, *no proof* at the trial can make good a declaration which contains no ground of action on the face of it.

Precisely the same rule is recognized in *Crouther vs. Rofield*, 1 *Salk.* 365, where the whole court held that, " though a title which could not be good could never be aided by a verdict, yet a title in a declaration which was only imperfectly set forth, *and where the want of somewhat omitted might be supplied by intendment, was cured by verdict.*

So in *Bishop vs. Hayward*, 4 *T. R.* 572, BULLER, Judge, said, "the cases of presumption alluded to, are where the plaintiff has stated a case *defective* in form, not where he has shown a title *defective in itself.* If the title be defective on the face of it, the court cannot sustain the judgment.

And Sergeant WILLIAMS lays down the same rule, 1 *Saund. Ubi Sup.* He says, " if the plaintiff stated a defective title, or totally omits to state any title or cause of action, a verdict will not cure such defects, either by the common law, or by the statutes of *jeofails;* for the plaintiff. need not prove more than what is expressly stated in the declaration, or is necessarily implied from those facts which are sta-ted." And so TUYSDEN, Judge, said in *Wooton vs. Hele,* 1 *Mod.* 294, that *when a good title is not set forth in the declaration to entitle the plaintiff to his action, it shall never be helped.*

The same rule is laid down by Gould in his Treatise on Pleadings, page 502, 503: he says that " facts *not alleged,* and which are not *implied in or inferable from* those which' are alleged and found, cannot be presumed to have been proved to the jury: in other words, no fact, not alleged, can be presumed in support of a verdict, unless proof of its existence must have been *involved in,* or *inferable from,* the proof of those which are alleged, and which the verdict has found." And again—"if the declaration omits to allege any sub-stantive fact, which is essential to a right of action, and which is not *implied in,* or *inferable from,* the finding of those which are alleged, a verdict for the plaintiff does not cure the defect." And he instan-ces the omission of an averment of *consideration* in assumpsit; of *loss of service* in a declaration for beating a servant—of the *scienter* in an action for injury done by defendant's dog.

The doctrine on this point was very much discussed in the case of *Addington vs. Allen,* in the Court of Errors in New-York. The Chancellor said, " if the plaintiff totally omits to state a good title or cause of action, even by implication, matters which are neither stated or implied need not be proved at the trial, and there is no room for in-tendment or presumption; as the intendment must arise from the verdict, when considered in connection with the issue upon which that verdict was given;" page 386. The same rule was admitted by Senator BEARDSLEY, page 395. And Senator TRACY, a most careful and pains-taking Judge, said " a rule like that urged on the argument, that after verdict all facts are to presumed which are necessary to justify the recovery, so far from disentangling justice from a net of forms, would inevitably embarrass it with uncertainties, and finally

overwhelm it in confusion." "It is one of the oldest and most inflexible rules of pleading," said he, "that if a declaration does not contain a cause of action, it shall not be aided after verdict. Where facts entirely omitted *are so connected with facts alleged, that the facts alleged cannot be proved, without proving those omitted*, after verdict the facts omitted are presumed to have been proved on the trial; but the total omission of a material fact, which is not connected with any fact alleged, is not aided by the verdict; and this, because the plaintiff need not prove, (indeed, should not be permitted to prove,) on the trial, more than what is expressly stated in the declaration, or is necessarily implied from the facts which are stated." And finally he adopts and declares the rule, laid down by BARON GILBERT, reiterated by Lord MANSFIELD, and approved by Chancellor KENT, in 17 *J. R.* 458, that, "if any thing essential to the plaintiff's action be not set forth, though the verdict be found for him, he cannot have judgment, because, if the essential parts of the declaration be not put in issue, the verdict can have no relation to it; and if it had been put in issue, it might have been found false." 11 *Wend.* 415.

It is unnecessary further to multiply quotations from authorities upon this point—nor would we have so far pressed upon the patience of the court but for the strenuous endeavor of the counsel for Holliday to show the verdict in this case to be omnipotent to heal.

Let us now test the two first counts in the declaration by the rules which we have shown to be established, and see whether any of the defects already enumerated are such as are not cured by verdict.

The first count, then, does not state that Henness was, in any way, liable to pay the amount of one hundred and thirty-three dollars, or any other amount, upon the note mentioned in the count, to Holliday or to any other person whatever. Nor is the fact that he was liable to pay it to Holliday inferable from, or involved in any other allegation in the count. There are but two allegations or expressions in the count from which any such liability to pay Holliday can even apparently be inferred; and these are, first, that Henness *made* the note *calling for* one hundred and thirty-three dollars; and, second, that Holliday caused it to be delivered to Sevier, and Sevier received it,

to sue on for the use and benefit of Holliday. In regard to the former expression, as there can be no promise unless there be some person to whom it is made, so to state the making of a note by A, *calling for so much*, is not to state that by the note he promised or became liable to pay so much, more especially when it is not stated who was payee in the note, or that there was any payee. Further, the expression, "*calling for so much*," means that the amount mentioned is the amount appearing on the face of the note. It is not an allegation that so much is *due* on the note, and there is no allegation in this count that the amount called for in the note, or any part thereof, *was due*. And of course, unless Henness was liable upon the note, and could be legally compelled by suit to pay it, no action could lie against Sevier for failure to sue.

As to the allegation that Holliday caused the note to be given to Sevier, and Sevier received it " *to collect for the use and benefit of Holliday*," it is not an allegation that Henness was liable to pay it to Holliday, or that if the money were collected, Holliday would be entitled to receive it. Admit that this allegation shows, with sufficient certainty, that the *object* of Holliday's *giving* and Sevier's *receiving* the note, was to have suit brought on it for Holliday's benefit, it does not imply or mean, either by the rules of pleading, or the common construction of language, that the suit, if brought, *would* have been, in law, for his use and benefit. Admit that he gave it and Sevier received it, for that object, (and that is the very extreme extent of the allegation,) and it does not follow, because such was their object, that, therefore, that object could be legally attained. Suppose that he had obtained possession of the note by a tort or a theft, clearly, in such case, no suit brought upon it, could have been " *for his use and benefit*," *in law*—because in law he would not be entitled to the proceeds of recovery—and yet the same averment might be made as to his *object* in giving the note to an attorney—that he gave it to the attorney and the attorney received it, to collect for his use and benefit. And in this we cannot be mistaken, unless it can be asserted and decided, that the *object* of a party is always and invariably the same with the ultimate result in law to be attained by him.

There is, therefore, no statement of any *liability* in Henness to pay the note to Holliday, or any right in Holliday to recover the proceeds of the note. In other words, no title to the note is stated as in Holliday—and "it is common learning," said Lord MANSFIELD; "that a verdict cures a title defectively stated, but not a statement of a defective title." The statement of Henness' liability and Holliday's title is wanting; and there is no other allegation in the count from which either is inferable—they are implied in no other allegation—they are involved in no other. Are there any other facts stated in the count, which could not be proven without at the same time proving Holliday's title to the note, and right to receive the proceeds of it? True, if he had alleged in this count, simply, that he was entitled to the proceeds of the note, this general allegation after verdict would have cured the omission to state *how* he was entitled—whether as payee, endorsee, or holder by delivery. The count does not contain such a general allegation—it neither shows that he was payee or endorsee, nor that he ever had possession of the note; but on the contrary, that he " *caused* it to be delivered" to Sevier. Is there not here a "total omission of a material fact which is not connected with any fact alleged?" Is there not " something essential to the plaintiff's action, which is not set forth?" Is "a good title set forth in the declaration?" Could proof of this fact, of Holliday's interest in, or right to the proceeds of the note, and Henness' liability to him, have been " involved in, or inferable from, the other facts alleged?" An answer to these questions will settle the whole matter.

Again, there is no allegation in this count that the note was due at the time of bringing the suit even, much less at the time when it was delivered to Sevier. Neither the date nor day of payment of the note was set out, and consequently it does not appear, either by allegation or inference, that Henness had ever become liable to pay the note at all, to any body; and consequently, there is an utter failure to show any obligation on the part of Sevier, to bring suit on the note, for he could not be compelled to do so, before it became due.

In regard to the liability resting upon Sevier, supposed to arise from what is considered as an allegation in the count of a contract between him and Holliday, and a retainer by one, and an acceptance thereof

by the other; the allegation is, that Holliday caused the note to be delivered to Sevier, and Sevier received from Holliday the note, to bring suit on, recover and collect from Henness, for the use and benefit of Holliday, " for certain fees and reward to him, the said Sevier, in that behalf."

An attorney is not like a common carrier, a porter, or a ferryman, who are bound from their situations in life to perform the work tendered to them; but he is like a carpenter or other mechanic; no consideration results from his situation as an attorney; nor from his undertaking to perform any particular service; nor is he bound to perform all the work tendered to him.  He is only bound to attend to the business of another, upon an agreement with him so to do, and upon a consideration agreed upon between the parties.  If he undertakes to do certain labor, without any consideration being fixed, and fails to do it, he has merely told a falsehood, and has not performed his promise; but for his non-performance of it, no action can be supported.  Where a person agrees to do a thing without any consideration, and fails in his promise, no action will lie against him for non-performance.  See *Elsee vs. Gatward*, 5 *T. R.* 149, 150, 151.  In that case it was said that, " if a party undertakes to perform work, and does not proceed on the work, no action will lie against him for the non-feasance"—*i. e.*, where no consideration is alleged—and further, " that in order to compel him to perform it, it should appear that there was an *express consideration* for it; the word 'retain' does not necessarily show that there was a consideration."  And as Lord KENYON said in the same case, " the justice of the case will not be altered by the form of action; for if assumpsit will not lie in such a case, there is no technical reasoning that will support such an action, as for a tort."  And therefore he relied on *Coggs vs. Bernard*, 2 *Lord Raym.* 909–919.  So in 3 *Henry VI*, 36 *B.*, 37 *A.*, BABINGTON, Chief Justice, said, " if I bring a writ of deceit against one for this—that the defendant was my attorney, and that, by his negligence and default, I should lose my land, &c.,—in this case it is fit that I should declare *how he was retained by me, and took his wages*, or otherwise the trial is abated."  See this case translated and quoted in *Thorne vs. Deas*, 4 *J. R.* 90, in which case the doctrine of *Elsee vs. Gatward* is reiterated and confirmed.

We admit, of course, that if the count had previously showed Holliday's interest in, or right to, the note, then the reception of it by Sevier, as alleged, would be considered the first step in the execution of the contract on his part, and no other consideration would be necessary; for it would then be a mis-feasance, and not a non-feasance. But inasmuch as no such title or interest appears elsewhere, but is attempted to be deduced from the retainer by Holliday, and the fees and reward to be paid, we contend that no sufficient consideration for Sevier's implied contract with Holliday is alleged, because it is not shown that the fees and reward were to be paid by Holliday; and that the court must infer that the fees and reward were to be paid by the person entitled to the proceeds of the note, and to whom alone Sevier was responsible—and who that person was, does not appear.

In *The Bank of Utica vs. Smedes*, 3 *Cowen* 662, which was an action on the case, by Smedes, and others, against the Bank, for neglect of the Bank in not collecting a note left with them for collection, the declaration, which is set out at length, alleges, with technical accuracy, that the plaintiffs were partners, &c., and the defendants, pursuant to an act of the Legislature, had established an office of discount and deposite in Canandaigua, and were then and there transacting and doing business as bankers, by the description of *the Utica Branch Bank at Canandaigua*, that certain persons, who are named, were, on the 12th of August, 1817, partners under the firm of Underhill and Seymour; that on that day the firm of Underhill and Seymour made their certain note, called a promissory note, whereby they promised to pay, to the order of John C. Spencer, at said Bank, 1237 dollars, with interest from date, for value received: it then alleges an assignment of said note, all in technical form and language, to the plaintiffs, and an endorsement by the plaintiffs to the defendants; that the note was deposited in the Bank to be collected, and that the defendants, President, Directors, and Company of said Bank, in consideration of such endorsement and deposite for collection, assumed and faithfully undertook to present it for payment, &c., and in case of default of payment, then, in consideration of certain reasonable fees and rewards, to be therefor paid *by said plaintiffs*, to said defendants, they undertook to give notice of protest to Spencer, and render him

liable as endorser: then follows the breach. The second count was substantially the same—and the third count set out the note verbatim, and regularly stated the endorsements.

We refer to this case, in order to show the vast difference between a good declaration and the one now before the court. And yet several objections were raised to the declaration referred to, and the case was argued in the Supreme Court and Court of Errors, on the sufficiency of the declaration alone.

That it is necessary for the plaintiff, in such an action as the present, to show in his declaration his title to the instrument to be sued on, or his right to the proceeds of it, when collected, resulted not only from the rules of pleading, but from the fact that if he had no such title or right, he has not been injured by the defendant's negligence, and consequently has no right of action. If he was not entitled to the proceeds of the note, he has not been injured, because no suit has been brought on it.

That in case, it is necessary to state the plaintiff's right or title in the matter or thing affected. See 1 *Ch. Plead.* 365; 1 *Saund. Plead. and Ev.* 339, 346; *Dawes vs. Peck,* 8 *T. R.* 330.

In *McKinster vs. Bank of Utica,* (which was another suit against the bank for non collection of a note left with it for collection,) the question as to who was entitled to bring the action was expressly decided. McKinster being indebted to Pardee, turned over to him the note in question, executed by one Dunn, and it was agreed that if the note was paid the amount was to be applied by Pardee to his debt, but if not paid, McKinster was still to be responsible to him. Pardee then left the note at the bank for collection, and it being protested and no notice given to the endorsers, he took it away again, and called on McKinster for payment, who paid him the amount and received the note back. The court decided that although Pardee had the control of the note, and the money would have been his if it had been paid; and although he left the note at the bank, and McKinster never had any intercourse with the bank in relation to it, yet the legal interest in the contract was in McKinster alone, and he alone could bring an action of assumpsit or case against the bank. 9 *Wend.* 46.

In the same case, in the Court of Errors, 11 *Wend.* 475, it was again decided that "the duty on the part of the bank, not being founded upon any express contract with the individual depositing the note for collection, but upon an implied agreement arising from the custom of banks, the duty is raised, or the assumpsit implied, *in behalf of such person as may be beneficially interested in having the duty performed*—that if A leaves a note for collection, and B becomes the owner of it before the time for the performance of the duty arrives, the latter is the proper person to bring the suit for an injury arising from the neglect of that duty."

These cases conclusively settle that Holliday could not maintain his action unless he showed that he was beneficially interested in having the suit commenced against Henness. We do not contend, nor do we understand the court to decide in the opinion which is questioned, that only the *legal owner* of the note can sue in this action—a position supposed by the defendant's counsel to be assumed, and which they controvert with vehement exertion. But we do contend, and of this the authorities admit no doubt, that he can only succeed upon a declaration which shows either the legal or equitable ownership of the note to be in him, and that he is legally or equitably entitled to the proceeds of it. And further, the two cases last quoted establish that the mere fact that A delivered the note to the bank or to an attorney to collect, and made with the bank or attorney the contract for the collection, will not, of itself, entitle him to sue the attorney for negligence.

The first count, therefore, is radically defective. It states, to be sure, that Holliday caused a note to be delivered to Sevier, which note was made by Henniss, and called for 133 dollars. But it does not state that the note was made payable to any person whatever, or that it was due when delivered, or when this suit was instituted. It does not state that Holliday was payee or endorsee of the note, or that the property in it had equitably become his, or that it was ever in his possession. It does not state that Holliday would have been entitled to the proceeds of it if collected. It does not state that Sevier undertook, or promised, or agreed, to sue upon it, or if so, when and within what time, but merely that he "received it to sue on and col-

lect." It does not state that the fees and reward were to be paid by, or the consideration to move from Holliday; and the question is, whether this count, stating no title at all, is defective after verdict. That it is, we think, hardly admits of a doubt.

The second count it is not necessary to consider at length. The objections made to the first apply with equal force here—and in addition it is so utterly incoherent and inane as to state no cause of action whatever. In truth there is hardly an allegation in the count, and it is only strange that the verdict of the jury and judgment of the court below should ever have been attempted to be sustained upon it.

If either of these counts is bad, then the judgment must be reversed. This we have already shown.

And we may notice here the new point assumed in the defence, to wit: that the setting aside of the judgment by *nil dicit* was unauthorized and irregular, and every thing done thereafter equally so. If this be the case, then the judgment must either be reversed, and go back for a writ of inquiry, and then come back here again, when the same questions will arise, and one bad count demolish the verdict; or the court must invent some new method of proceeding with which we are unacquainted.

As to the opinion of the court below, in admitting the receipt of Sevier in evidence, it will be necessary to say but a few words. The declaration in this case shows a defective title. It omits to allege Holliday's interest in the note, or his right to receive the proceeds; and it also omits to show any liability in Henness to pay it to any body at any time. It is not necessary for the plaintiff to prove, *and he will not be allowed to prove more than he has alleged,* where he omits to allege a fact essential, of the gist of his action, and not involved in, implied in, or inferable from any other allegation in the count. He could not recover without proving what he had omitted to allege—and he offered this receipt to prove the very things which he had omitted to allege. He offered it to prove that the note was due, and that Sevier had received the note from him, and the receipt was either impertinent, because it did not prove or tend to prove his interest in the note and Henness's liability, or it was evidence to prove facts not al-

léged, and which therefore he was not allowed to prove. In either case it was improperly admitted as evidence. The *reason* assigned by the court below for admitting it, is improperly before this court. It is not an instruction to the jury, nor does it appear that the jury ever heard it. It is merely the reason for a decision—and a decision might be right, though the reason given for it was wrong. And so here, the reason given for admitting the receipt may be correct. It might " conduce to prove a *privity* of contract," and still have been wrongly admitted. No such *privity* of contract is alleged in the count. A *contract* is alleged, but no *privity of interest* is alleged, which makes a privity of contract, for Holliday might contract with Sevier by handing him the note as agent of English, and yet there would be no privity of contract. No privity of contract therefore is alleged, because it is not alleged that Holliday was interested in the note.

And it may further be questioned, whether, (as every pleading is to be taken most against the pleader,) the court would not infer that the note mentioned in the first and second counts was payable to Holliday himself. It seems to us that such would be the presumption. And if so, the receipt could not be admitted, because it was for a note payable to another, and no such note was mentioned in the count; and further, it was for a note due on a day certain, and no *such* note is described in the count. This we suggest for the consideration of the court; but we rely with perfect confidence on the other ground assumed, to wit: that essential allegations are omitted, and therefore no proof of those allegations could be adduced.

TRAPNALL & COCKE, in response:

The counsel for the plaintiff has again discussed the effect which the withdrawal of a demurrer and pleading over to the merits ought to have in waiving errors. Having heretofore fully considered this question and adduced before the court all the authorities in relation to it within our reach, we shall not obtrude upon them a second argument on this point.

Since the first discussion of this question in this case, the court in the cases of *Jarrett vs. Wilson*, 1 *Ark.* 137, and *Gage vs. Milton*, 224, have recognized the doctrine insisted upon by us, (not that imputed to us in the plaintiff's brief,) and we have seen nothing in the

70

argument or authorities cited by the opposing counsel, calculated to shake the decision in those cases. Indeed the authorities cited sustain the decisions of this court made in the cases referred to. For they establish the principle that " where the defendant might on arguing the demurrer have availed himself of the exception, he shall not afterwards move in arrest of judgment." But it is insisted that although the plaintiff is now cut off from the benefit of this motion, yet that he is not without his remedy by writ of error. And his right to that remedy is placed by counsel upon the principle that where there are some good and some bad counts, and a general verdict, the judgment must be reversed. It is unnecessary to examine the numerous authorities cited in support of this latter principle. For whatever may have been the English practice upon this subject, it can have no authority here, because our own statute has introduced a different rule. It declares that where there are several counts in a declaration, one or more of which are faulty, and entire damages are given, the verdict shall be good. See *Steele and McCamp. Dig., judicial proceedings, sec.* 52. As this principle is the key stone in the arch of the argument which follows, when that gives way, the whole fabric must fall with it. And here we might safely rest the argument of this case, for there is one count which after verdict must be admitted to be good, and that is sufficient to sustain the judgment. As all the evidence in the case is not before the court, they cannot know but what the finding was in fact upon that count. But however this may have been, the law expressly requires that they shall apply it to that count, and the verdict must stand. But we are not willing to admit the correctness of the plaintiff's criticism upon the two counts in case. We concede that the draftsman of this declaration has not drawn it with technical precision and accuracy. But we deny that its defects are of that malignant character which the healing power of a verdict cannot cure. The general rule upon this subject is that the defective statement of title in the declaration will be cured by verdict, but the statement of a defective title will not. If, therefore, the declaration shows no title at all in Holliday, or a defective title, we admit the verdict cannot cure the defect. But if it shows a title in him, although imperfectly or defectively stated, the verdict will cure all defects or omissions, and

Sevier *against* Holliday.

the judgment must be affirmed. In applying these principles to this declaration, we must earnestly urge upon the court to keep steadily in view the distinction which in our argument for a re-hearing we have endeavored to draw between the suit against Henness on the note and the suit against Sevier for the breach of his contract with Holliday. The right of Holliday to maintain this action is not derived from this note, nor is this suit founded upon it.' But his right of action, his title to sue, is derived from the contract entered into between Sevier and himself, and the breach of that contract by Sevier. The question then presents itself, does the declaration state a contract either express or implied between Sevier and Holliday; and show facts, although imperfectly stated, from which his right to a recovery can be inferred? That the declaration does state a contract between them is too manifest to admit of any doubt or controversy. And the *statement of that contract is the statement of Holliday's title.* It is that which gives him his right of action, and his right to recover the damages he has sustained in consequence of the breach of it. But it is objected that the first count does not state that Henness was in any way liable to pay the amount of the $133, or any other amount upon the note mentioned in the count, to Holliday or any other person whatsoever. The objection is fully answered by the authority referred to in plaintiff's brief, and which we admit to be the true rule, " that facts not alleged, and which are not implied in or inferable from those that are alleged and found, cannot be presumed to have been proven to the jury. In other words, no fact not alleged can be presumed in support of a verdict, unless proof of its existence must have been involved in or is inferable from the proof of those which are alleged and which the verdict has found." Now we maintain that the fact that Henness was to pay the $133 upon the note, that the note was due, and that the money when collected would be the property of Holliday, is involved in and inferable from the proof of the facts alleged and which the jury have found. What are the facts alleged?

1st. That Holliday delivered this note to Sevier, as attorney, to collect.

2d. That Sevier accepted it, and agreed to bring suit upon and collect it, for the use and benefit of Holliday for certain fees and rewards.

3d. That Sevier violated his contract, and that Holliday in consequence thereof, lost the amount of this note.

To sustain these allegations, Holliday must have proven the delivery and acceptance of the note, and the contract for its collection as alleged. His right to the money is clearly inferable from the allegation that it was to be collected for his use and benefit. That the note was due, that Henness was legally liable for the payment, and that it could have been collected of him had Sevier used due diligence, are involved in the allegation that Sevier accepted it to bring suit upon it, and in the charge that through the carelessness, negligence, and default of Sevier, the said $133 have been wholly lost to the said Peter Holiday. As the gist of this action is the contract with Sevier, and the injury sustained by Holliday in consequence of the neglect of Sevier to comply with the undertaking on his part, whatever tends to prove the contract and the damages sustained is necessarily involved in the issue which the jury were called upon to find. The objection we are combating seems to be based upon the supposition that the title of Holliday, and his right to sue, is founded upon the note of Henness, referred to in the declaration, and that it was consequently necessary to describe the note and his title to it with precision and certainty, and having failed to do so, it is insisted he has shown no title. We are convinced it will require but little reflection to show the fallacy of this argument. Whether Holliday had any interest in the note, whether Henness was legally liable to pay it or not, and whether the money could have been made if the attorney had used proper diligence, are matters of evidence for the jury upon the trial. The rule is well settled that the evidence by which an allegation is proved need not be stated in the declaration. 6 *Com. Dig.,* title *Pleader A. p.* 1. The case of *Pasley, and another, vs. Freeman,* 3 *Ten. Rep.* 60, was an action in the nature of a writ of deceit; to which the defendant pleaded the general issue. After a verdict for plaintiffs on the third count, a motion was made in arrest of judgment, and it was objected to the declaration that if there was any fraud the nature of it was not stated. BULLER, J. in remarking upon this objection, among other things says, " the cases I have stated and *Sid.* 146, and 1 *Kib.* 522, prove that the declaration states more

than is necessary for *fraudulenter* without *scienter*, or *scienter* without *fraudulenter* would be sufficient to support the action. But as Mr. Twisden said in that case the fraud must be proved, the assertion alone will not maintain the action, but the plaintiff must go on to prove that it was false, and that the defendant knew it to be so, by what means that proof is to be made out in evidence need not be stated in the declaration." If the contract was made as stated in this declaration, and if Sevier did fail to perform it on his part, the damages sustained, and how and in what manner occasioned, are evidently matter of proof, and need not be stated. If the note or its proceeds did not belong to Holliday, if Henness was not legally liable to pay, or if he was insolvent or unable to pay, all these causes, or any of them, would have been a good defence to the action. Indeed the proof of these facts being necessarily involved in the issue, and essential to Holliday's recovery, the law will now presume them to have been proved and the defects or omissions of the declaration will be cured by the verdict. It is further urged as a radical objection to this declaration, that it contains no statement of Holliday's title to this note. The answer we have given to the former objection is a sufficient reply to this. The plaintiff's counsel admits that if the declaration had stated that Holliday was entitled to the proceeds of this note, this general allegation after verdict would have cured the omission to state how he was entitled. Although the declaration does not contain such an allegation in *totidem verbis:* yet it does contain an averment which in its legal import is the same. It distinctly states that this note was to be collected for the use and benefit of Holliday, and that he, by the negligence and default of Sevier, wholly lost the $133; under this averment it would clearly be competent for him to introduce proof to show that the money when collected would be for his use and benefit, and in doing so to make out his title to the note. It is imputed as a farther defect in this declaration that there is no allegation that this note was due at the time of bringing this suit. If the note was not due at the time of its delivery to Sevier, or at the time of bringing this action, Holiday, of course, could not recover. But the failure would not be owing to the want of an averment that the note was due, but it would be for want of proof to show a breach of the contract and injury to Holliday, by

the negligence and default of Sevier.   No action could of course be maintained upon the note until it became due.   And the jury could not have found that Sevier had violated his engagement to sue, or that Holliday had sustained any injury by his neglect, unless a right of action had accrued.   And as the proof of each of those facts was necessarily involved in the issue which the jury were to try, their verdict is a conclusive response to this objection.

But it is contended that an attorney is not like a common carrier, &c., and that where he agrees to do certain things, without any consideration, and fails in his promise, no action will lie.   Upon this point there is some conflict of authority; but, conceding the principle to be truly stated, we cannot perceive its application to this case.   For we find, upon an examination of the authorities referred to in plaintiff's brief, that they are decided expressly upon the ground that the promise was a mere gratuity, made without any consideration whatever. But a consideration is expressly stated in this declaration.   Sevier undertook to bring suit on this note, and collect the money for Holliday for certain fees and rewards.   To make this objection available to the plaintiff, it would be necessary to show that no action could be maintained for the breach of promise to perform certain services, unless the contracting parties, at the time of making the contract, had expressly liquidated and agreed upon the precise amount of the fee or reward to be paid for the services.   A position which, we fearlessly affirm, cannot be sustained by one single authority.   If A engages an attorney to perform certain services, and agrees to pay him therefor, the promise, on the part of the attorney, is not a gratuity, but made upon a good and legal consideration, and although the exact amount of the fee to be paid is not expressed, the law will imply that he is to receive a reasonable reward.   Plaintiff's counsel admits, if the count had previously shown Holliday's interest in, or right to the note, then the reception of it by Sevier, as alleged, would be considered the first step in the execution of the contract on his part, and no other consideration would be necessary.   The declaration does allege that the contract was made between Holliday and Sevier—that the service to be performed was for the use and benefit of Holliday—and the obvious and necessary presumptions of law would be that Holliday,

who had engaged the services of Sevier for his own benefit, was alone responsible to him for his fees and reward. The counsel for plaintiff, in substance and effect, insists, in defiance of all the well settled rules of presumption, that the court must now presume that this note belonged to, and was to be collected for the use and benefit of some one else. They must presume that Holliday made the contract for some one else, and not for himself, and that that other person, and not Holliday, was liable to Sevier for his fees and reward. And then, upon this long series of unwarrantable presumptions, he asks the court to build the further conclusion, that there was no consideration passing between Holliday and Sevier to sustain the promise made by the latter, and that it was, therefore, a mere gratuitous promise, for the breach of which no action would lie.

We have examined the case of *McKinster vs. The Bank of Utica*, and cannot perceive that it establishes a single principle hostile to the rights of Holliday. In that case the court decided that the suit was properly brought in the name of McKinster, because the facts, in evidence before them, proved that, at the time of bringing the suit, the property in the note, and the right of action, was in him. The facts, as stated in the opinion of the court, were as follows: "It appeared, from the testimony of William J. Pardee, that the plaintiff being indebted to him in the sum of $1500, after the note was made, and before it was payable, turned out this note and another for $300 in part payment of said debt. That the agreement was that, if the notes were paid, the amount was to be applied by the witness to his debt; but if not paid, the plaintiff was still to be responsible. The witness stated *in express terms, that he did not consider himself the owner of this note;* but had the control of it, and the money would have been his, if the note had been paid. The plaintiff *paid witness the amount of this note* after it was received *back, and the witness then returned the note to the plaintiff.* The witness left the note at the Bank, and the plaintiff never had any intercourse with the Bank in relation to it." It was contended that the action was brought in the name of Pardee, and not McKinster. With these facts in proof before them, the court go on to say that, " McKinster was the only person legally interested in having the endorsers duly charged; he was absolutely bound to pay

the amount of this note to Pardee, if the note itself was not paid at maturity. The property in the note was vested in Pardee; he held it as collateral security only, to be returned if not paid." And we beg the court to mark, particularly, one of the leading reasons for this conclusion, and that is, that as the injury had fallen upon McKinster, he was entitled to the redress which the law affords. Is there any thing on the record, in the case now before the court, which shows that Holliday had no property in the note; that he held it merely as collateral security; that the debt which it was given to secure had been paid; and that he had consequently sustained no injury from the default of Sevier? On the contrary, the legal inference, from the finding of the jury, proves the reverse of this to be true. As the question of damages was directly in issue, the verdict in favor of Holliday is conclusive that the injury, which resulted from the breach of the contract, had fallen upon him; he, therefore, was entitled to the redress which the law affords. The counsel for plaintiff, before he can derive any benefit from the authority here referred to, must induce the court to indulge the illegal and extravagant presumption, that Holliday did not make the contract for himself, but for another; that he had no interest in the note, legal or beneficial; and that he sustained no injury from the loss of the money, by Sevier's neglect. If counsel for the plaintiff was at liberty to thrust aside the facts stated on the record, and substitute in their place their own fanciful and strained presumptions, we admit his authority might have some application to this case, and his arguments some force. But we cannot believe, after the verdict of the jury has found all these facts in favor of Holliday, that the court will presume away his rights. They will require something more tangible—more certain and positive, before they will consent to reverse the judgment below.

We have heretofore endeavored to establish the position, that it was not necessary, to enable Holliday to sue for the breach of this contract, that he should have the legal *interest* in the note. It was enough if he held an equitable or beneficial interest. And the authority cited by plaintiff, from 11 *Wend.* 475, is directly in point, " the duty is raised, or the assumpsit implied, in behalf of such person as may be beneficially interested in having the duty performed." This decla-

ration does allege a beneficial interest in Holliday. It expressly declares this note was to be collected for his use and benefit. How, or in what manner he became entitled to that beneficial interest, it is not necessary to aver. Such a rule would give rise to a tedious and vexatious prolixity in pleading, without any corresponding benefit. It is sufficient to aver the existence of that interest, while the manner, or title by which it was acquired, will be the legitimate subject of proof, upon the trial. And the fact, that a mere beneficial owner of a note can maintain an action at law, against an attorney, for his breach of contract to collect, shows, conclusively, that their right of action is not founded upon plaintiff's title to the note, but upon the contract with the attorney. For if the title or right of action, was derived from, or founded upon the note, that title, to maintain an action at law, must be a legal title, and not a mere equitable or beneficial interest. If, then, Holliday's title to the note does not give the right of action, how can it be necessary to state that title? And can it be said that he has shown no title in himself to maintain this suit, because he has omitted to state a circumstance which, even if alleged, could have given him no legal right of action.

Having already, in our argument for a rehearing, discussed the propriety of introducing Sevier's receipt in evidence, we deem it unnecessary to argue that question again. We would, however, remark that, if we are correct in the positions we have above assumed, they are a sufficient answer to the objections urged to the admission of this receipt in evidence. For those objections grow out of, and are founded upon the propositions we have been combating, and upon which the plaintiff's counsel seem to stake the result of this cause.

We shall not question the authority cited in plaintiff's brief, in regard to the defects cured by verdict; we should, ourselves, have referred the court to most of them, had we not been anticipated by the opposing counsel. But we deny the application attempted to be made of the principles, settled by those authorities, to the facts of this case. The true principle is stated, with admirable clearness and precision, in 1 *Saund. Rep.* 228, *a note* 1. "When there is any defect, imperfection or omission, in any pleading, whether in *substance* or form, which would have been a fatal objection upon demurrer, yet if the

71

issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the Judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by verdict by the common law." And the case stated in illustration of this rule is, that where in a debt for rent by a bargainee of a reversion, the declaration omitted to allege the attornment of the tenant, which before the statute of 4th Anne was a necessary ceremony to complete the title of the bargainee, and upon *nil debet* pleaded, there was a verdict for the plaintiff, such omission was cured by the verdict by common law, but is a fatal objection after judgment by default, since the statute of 4 Anne; and this construction seems agreeable to the spirit, as well as the letter of that statute. For it is clear that, *unless the tenant had in fact attorned, the plaintiff was not entitled to recover. It is not alleged in the declaration that the tenant had attorned.* It is, at least, as probable that he had not attorned, as that he had; and it does not appear which is the fact. Upon what ground, then, can the court presume attornment? The judgment by default affords none, for that *only admits such facts as are alleged.* But where the verdict has established the grant, that is a sure ground whence the court can presume attornment, because, without *proof of it, the plaintiff could not have made out his title as bargainee* of the reversion; nor could Holliday have established that the note, in this case, was to be collected for his use and benefit, or shown that he had sustained any injury from the laches of Sevier, without proving either a legal or beneficial interest in the note. The proof of the fact was necessarily involved in the issue submitted to the jury, and the court will now be fully warranted to presume that that fact was proven. The authority, above cited, shows conclusively that the omission to state a material fact, and one, too, without the proof of which the plaintiff would not be entitled to recover, will be cured after verdict. It is manifest, therefore, that the statement of a defective title is not made out against a declaration in every case where it fails to aver a fact essential to entitle the plaintiff to recover. The allegations, in the declaration, may not, of themselves, show a title in the plaintiff to support the judgment; yet they may lay a

Sevier *against* Holliday.

foundation for the introduction, before the jury, of proof to supply those omissions, and thereby perfect his title. The title will then be inferred, not from the declaration alone, but from the declaration, plea and verdict. The distinction is between those cases, where no right of action whatever is stated, and no facts alleged from which such a right can be inferred. And those cases where the declaration contains an imperfect or defective statement of title—where it alleges such facts as do not, of themselves, contain a full and perfect title, but which lay the foundation for the introduction of proof, which will supply the omission, and cure the defect. The counsel for plaintiff, not attending to this important distinction, seems to predicate his argument upon the belief that the declaration will be radically and incurably bad, unless every fact upon which the plaintiff's right of recovery depends is fully and distinctly stated. It is this misconception which has led him to insist that the declaration in this case should have stated Holliday's title to the note—the liability of Henness to pay—that the note was due, &c., &c. Even admitting that Holliday could not recover without the proof of those facts, it does not, from them, necessarily follow that the declaration, in omitting to state them, is incurably bad. For if it states any other fact, the finding of which involves the proof of other facts not stated, it will be sufficient after verdict. In this case Holliday could not have obtained a verdict for damages without proving Henness' liability to pay—that the note was due—and that he was entitled to its proceeds when collected. In examining the reported cases, we find many instances in which the title is far more defective than in the one now before the court, and yet the omissions have been held to be cured by the verdict. The case of *Ward vs. Bartholomew*, 6 *Pick.* 410 " was a writ of entry, in which the demandant claimed an undivided third part of a certain tract of land in Sheffield," whereof the tenant unjustly disseized the demandant within thirty years. The tenant pleaded *non disseisivit.* A verdict was found for the demandant, and a motion was made in arrest of judgment, because the declaration contained no statement of title, as it wholly omitted to allege that the demandant had ever been seized; and the appellate court, in delivering their opinion, say, " that the count, on which the verdict is returned, is remarkably

defective; and, upon general demurrer, the defect would have been fatal.  This declaration, though it alleges no seisin, in the demandant, avers that he was disseized by the tenant.  Now it is plain that such a verdict could not have been returned without proof of a seisin by the demandant, for, he could not be disseized without having been seized; and no court could have allowed, nor could any jury have agreed, in that verdict, unless there was sufficient evidence of *the fact, without proof of which the demandant could not have advanced a step on the trial.* It is true, a seisin can only be inferred from the declaration, plea and verdict; and that the case is still left destitute of any averment, or even implication, of the nature and extent of the seisin." See also, *Kinsley vs. Bill, and another,* 9 *Mass. Rep.* 189, *Boaden vs. Ellis,* 7 *Mass. Rep.* 507.

We think we have conclusively shown that the title of Holliday to maintain this action is not founded upon the note of Henness, referred to in the declaration, but upon the contract with Sevier, and the breach of it.  The note is merely the subject matter of the contract.  But it is the contract itself which establishes that legal connection and relationship between the parties which gives the right of action in this case.  If, then, the declaration contains the statement of a contract—the breach of that contract, and that Holliday was injured thereby—it lays the foundation for the introduction of the proof of all the circumstances which establish that contract, the breach it, and the consequent damage to Holliday.  And, after verdict, the court must presume that every fact, necessary to establish each of these specific allegations, was found by the jury.

DICKINSON, *Judge,* delivered the opinion of the court:

At the January term, 1837, an opinion was delivered in this case, reversing the judgment of the court below, and remanding the cause for further proceedings to be had therein according to law.  At the same term the counsel for the defendant in error filed a written argument for a rehearing, which was subsequently granted, and the case now stands in the same attitude as if no opinion had ever been given.  The points in controversy have been elaborately and ably argued on both sides.  And after a careful review of the whole subject, we can-

*Sevier against* Holliday.

not perceive any sufficient ground for a reversal of the opinion heretofore given.

That opinion proceeded upon the principle, and was based upon the fact, that the defendant in error is not entitled to recover, because he failed to show that he possessed any interest whatever in the subject matter of the suit. And that the receipt adduced upon the trial, so far from proving a privity of contract, expressly estabished a legal interest in another, and therefore defeated the plaintiff's right of action. In order to understand the points that are raised by the assignment of errors, it is necessary to consider the nature and character of the action brought, and the proof that the plaintiff below adduced on the trial, to entitle him to a recovery. The action is in case, and the declaration contains three counts.

The first count alleges, that " Holliday caused to be delivered to Sevier, and Sevier accepted and received from him a certain note of hand, made by one Joshua J. Henness, calling for one hundred and thirty-three dollars, to bring suit on, recover and collect from the said Joshua J. Henness, for the use and benefit of Holliday, for certain fees and rewards to him the said Sevier in that behalf." The second count states that " Holliday caused to be delivered to Sevier, attorney as aforesaid, a certain other note for one hundred and thirty-three dollars, to him the said *Ambrose H. Sevier,* being such attorney as aforesaid, in a reasonable time then next following suit brought on it, and the said debt of one hundred and thirty-three dollars as aforesaid to be recovered and collected of and from the said Joshua J. Henness, for the use and benefit of said Peter Holliday, for certain fees and reward to the said Ambrose H. Sevier in that behalf." That Sevier received the note, and undertook to sue, recover and collect it, but did not bring suit, so that the debt was lost. The third count is in trover, for a certain other note for $133, made by Joshua J. Henness, the proper goods and chattels of Peter Holliday.

The defendant filed a general demurrer to the declaration, which was overruled, and an interlocutory judgment was then entered, and a writ of inquiry awarded, returnable to the next term of the court. At the July term thereof, 1828, on a motion and affidavit filed by the plaintiff in error, the judgment previously rendered was set aside,

and he, by leave of the court, put in a plea of not guilty, upon which issue was taken.   And, on the trial of the case, the plaintiff offered in evidence the following receipt: " Received of Peter Holliday one note of one hundred and thirty-three dollars, against Joshua J. Henness, drawn in favor of William English, this the 14th of December, 1825.

A. H. SEVIER."

To the introduction of this receipt, as evidence, the defendant objected, but the court overruled the objection, and it was permitted to go to the jury.   To this the defendant excepted; and thereupon a verdict and judgment were given for the plaintiff; and the case is now brought here by error to reverse the judgment of the court below. The counsel in the case having differed in regard to the opinion expressed by the court as to the receipt, the court then stated the receipt was evidence conducing to prove a privity of contract between the plaintiff and defendant; to which opinion there was also an exception taken by the defendant.   He then moved in arrest of judgment, which motion was overruled.

The defendant below is charged, as an attorney at law, upon a breach of contract in the discharge of his official duty.   Before the plaintiff can fix his liability, he must allege and prove a valid contract or cause of action, and its breach and violation on the part of the defendant, by which he was damnified.   These facts must appear upon the record, or necessarily arise by presumption or intendment of law.   An attorney is not liable, in the discharge of his official duty, for claims put into his hands to collect, as such attorney, unless it be shown that he is guilty of culpable negligence in the prosecution of the suit, whereby the plaintiff has lost his debt.   Nor can he be held liable for money, collected by him as an attorney, unless a demand be made upon him and he refuses to pay it over, or remit it, according to the instructions of his client.   Demand and refusal are indispensable to the plaintiff's right of recovery.   And so it has been ruled in this court, in the case of *Cummins vs. McLain and Badgett,* decided during the present term.   To entitle the plaintiff to recover upon the two first counts of his declaration, it was, therefore, necessary for him to prove, upon the trial culpable negligence by the attorney, in failing to collect the note put into his hands, or in refusing to pay it over, upon demand,

Sevier *against* Holliday.

after collection. These facts the plaintiff was bound to prove, or the jury were not warranted in finding a verdict in his favor They may arise in the evidence adduced upon the trial, or they may be inferable from the verdict and judgment rendered in the court below, provided the plaintiff has set out in his declaration a good and valid cause of action.

It is contended, in behalf of the plaintiff below, that all the defects in the declaration are cured by the defendant's pleading over to the action, or that the defects are of such a character as are remedied by the verdict, or by the statute of jeofails and amendments, and that the court below rightly admitted the receipt in evidence. These propositions are denied by the plaintiff in error. And it is alleged that the declaration contains no valid cause of action; and therefore the defects of the declaration cannot be aided by a verdict, or by the statute of jeofails and amendments.

The whole doctrine upon the subject, as well in regard to what defects are cured at common law, and what by the statute of jeofails, is discussed with much ability and learning by Sergeant Williams, in his note to *Stennel vs. Hogg*, 1 *Saund. R.* 228, *A. B. and C.* The principle there laid down is, " that where there is any defect, imperfection or omission, in any pleading, whether in substance or form, which would have been a fatal objection on demurrer, yet if the issue joined be such as necessarily requires, on the trial, proof of the facts so defectively or imperfectly stated, or omitted, and without which it is not to be presumed that either the Judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission, is cured by the verdict."

In *Speares vs. Parker*, 1 *T. R.* 145, BULLER, Judge, said " after verdict nothing is to be presumed but what is *expressly stated* in the declaration, or what is necessarily implied from those facts which are stated;" that is, where the whole is stated to exist the existence of the parts is implied, or where the chain is alleged to exist, the existence of the component links will be implied after verdict. And this doctrine is fully sustained by all the authorities upon the point.

In *Addington vs. Allen*, in the Court of Errors in New-York, the Chancellor said, " if the plaintiff wholly omits to state a good title or

cause of action, even by implication, matters which are neither stated or implied need not be proved at the trial, and there is no room for intendment or presumption; as the intendment must arise from the verdict, when considered in connection with the issue upon which it was given."

The rule laid down by Chief Justice BARON GILBERT, and reiterated by Lord MANSFIELD, and approved by Chancellor KENT, in 17 *J. R.* 448, is, "if any thing essential to the plaintiff's action be not set forth, though the verdict be for him, he cannot have judgment, because, if the essential parts of the declaration be not put in issue, the verdict can have no relation to it; and if it had been put in issue, it might have been found false." 11 *Wend. R.* 415. And Ld. MANSFIELD has said, "that a verdict cures a title defectively stated, but not a defective title."

We will now proceed to test the first and second counts in the declaration by the authorities and principles above cited and laid down. The first count does not state that Henness was liable on the note, or that it contained any promise, by him, to pay any given sum of money. It omits to state to whom the note was payable, and it does not show any title in Holliday to the note, inasmuch as it neither stated that it was made payable to him, or endorsed over to him, or delivered to him in any way whatever. And it is questionable whether it contains any promise or undertaking, by Sevier, to sue or collect the note, either expressed or implied. It fails to state, in legal language, by whom the fee or reward was to be paid to Sevier for the collection and prosecution of the suit. As to the allegation " that Holliday caused the note to be delivered to Sevier, and Sevier received it to collect for the use and benefit of Holliday," it certainly does not amount to a substantive averment that Henness was liable to pay, or that Holliday was authorized to receive the money when collected. It may, and probably does show the object of the parties in giving and receiving the note, which was to bring suit upon it; but it is not justly inferable, from the object and intention of the parties, that the suit, when brought, would be for the benefit and use of Holliday; because, in law, he is not entitled to the proceeds of the note, unless he is shown to be the legal or equitable owner of the note. The same averment might, with equal truth, be made if Holliday possessed him-

self of the note by a fraud or by a tort. There is no title to the note stated in Holliday, nor is it necessarily implied in any other allegation arising upon the pleadings or verdict. There are, in our opinion, no facts stated which could not be proven, without, at the same time, establishing Holliday's title to the note, or to the proceeds of it. The count does not show that Holliday was payee, endorsee, or even that he ever had possession of the note; and, therefore, there is a total omission of a material fact, which has no connection with any other fact alleged or found. Is there not, then, something essential to the plaintiff's right of action which is not set forth? or in other words, does not the count contain a statement of a defective title which is not aided by verdict? There is no allegation in the count that the note was due at the time of bringing the suit, or at the time that Holliday caused the same to be delivered to Sevier for collection; and, consequently, it does not appear, either by any allegation, or by any inference from the verdict, that Henness had ever become liable to pay the note, at all, to any body. And, therefore, a failure upon the part of Sevier, to prosecute the claim, or to collect the money, would not make him responsible, if the individual who executed the note was not legally bound to pay it. The allegation that Henness made the note, calling for $133, certainly does not show for whose benefit the note was executed; nor does it contain any express or implied promise to pay the same; for there can be no promise, unless there be some person to whom that promise was made. The expression, " *calling for so much*," means that the amount mentioned is the sum appearing upon the face of the note, but it is not an allegation that such sum was then due on the note. Nor does it show to whom due; or that the party making the note was legally bound to pay it. The second count is still more radically defective than the first; in fact, it scarcely has the form or substance of a count; and all the objections that lie to the first apply with increased force and effect to the second count, and show it to be totally defective in stating a good cause of action. The question then recurs, are these defects aided or cured by the legal presumptions in favor of the verdict and judgment, or by the statute of jeofails and amendment? If the view we have taken of the subject be correct, they certainly are not; for they

72

are not such defects, imperfections or omissions as may be supplied by a verdict, or by the statute, because they shew a defective title, and *not* a title defectively stated. No proof, at the trial, can make good a declaration which contains no ground or cause of action. The defects, contained in the two counts, are not implied in, or inferable from the finding of the jury, or from any allegation contained in the declaration; consequently, they are destructive of the plaintiff's right of action.

The receipt, that was offered in evidence, if it proves any thing, certainly tends to disprove the allegations in the first and second counts. The legal inference drawn from the counts, if they warrant any conclusion at all, is, that the note was executed by Henness to Holliday, or assigned over by the holder to him, for his use and benefit. The receipt, adduced upon the trial, justifies no such conclusion. It merely shows that Sevier received of Holliday a note, of $133, for collection, against Joshua J. Henness, drawn in favor of William English. It does not show that Holliday was the owner or holder of the note. It clearly establishes the fact, that the note was executed by Henness, and was made payable to English, and, of course, he was the legal owner thereof, and entitled to the proceeds on its recovery. It proves possession and interest in another, and not in Holliday, because, English being the legal owner of the note, the presumption is, that he had the possession of it, and was entitled to the proceeds after recovery. Then, so far from establishing the allegations in the first and second counts, it tends to disprove and contradict them. For it shows that Holliday had no interest whatever in the note; and if that be the case, Sevier could not be held answerable to him for a breach of contract, in failing to collect it, as an attorney. The introduction of the receipt, as evidence to sustain Holliday's right of action, was, therefore, improperly admitted by the court.

The second bill of exceptions has, in our opinion, nothing to do with the question now before this court. If the receipt was evidence for any purpose at all, to sustain the plaintiff's declaration, it ought and should have been permitted to go to the jury. The reason assigned by the court for admitting it cannot be called in question, or have any bearing upon the case. It is certainly not an instruction given to the

Sevier *against* Holliday.

jury, nor does it appear that the jury heard it. It is merely the assigning of the reason for a decision, about which the counsel differed. The admission or rejection of the testimony offered, is the fact to which the court look, and not the reason upon which it is predicated.

The party will not be allowed to prove more than he has alleged in his declaration, and where he omits to allege a fact essential to the gist of the action, and which is not involved in the pleadings, or inferable from the finding, he fails to show a good cause of action; and, consequently, no valid judgment can be pronounced in the premises. The court below, in the second bill of exceptions, in the opinion which they have given, state that " the receipt was evidence conducing to prove a privity of contract between the plaintiff and defendant." No privity of contract was alleged in the declaration, nor is there any interest averred, which raises a privity of contract. For it was certainly competent for Holliday to contract with Sevier as the agent of English; and in such case, it cannot be pretended that there could be any privity of contract.

The two counts attempt to set forth a contract, but wholly fail to do so in legal form or effect, and they do not disclose any privity of interest which makes such an agreement.

The counsel of the defendant in error is mistaken in supposing that the court, in their previous opinion given in this case went upon the supposition that the action was founded upon the receipt. They certainly intended to convey no such idea. The opinion proceeded upon the principle, that the plaintiff below, having failed to show any legal or equitable interest in the note or its proceeds, he, of course, could not be injured or damnified by a breach of contract on the part of the defendant. Having no interest in the note, made by Henness, he could sustain no injury by Sevier's failure to prosecute the suit or collect the money. Whatever might be Sevier's liability on the receipt, still, Holliday could claim no benefit from it, as he was not legally or equitably interested in its proceeds. The argument for a rehearing assumes, as its basis, that Sevier made a legal and valid contract with Holliday for the collection of the note, and the breach of this contract constitutes the gist of the plaintiff's action. This contract, it asserts

that the declaration discloses, and that it is legally inferable from the facts alleged, and from the finding of the jury and judgment of the court below.    The argument assumes that to be true which constitutes the question in issue between the parties.    If its premises be once granted, its conclusions unquestionably follow.    We have endeavored to controvert the position that there is any legal or valid contract disclosed by the declaration, or upheld by the proof, or inferable from the verdict and judgment.    If the authorities we have cited, and the reason adduced in support of them, be correct, then the two first counts in the declaration wholly fail to establish a good cause of action; and, therefore, the plaintiff had no right to succeed upon them.    The third count is in trover for a certain other note, for $133, made by Joshua J. Henness, the proper goods and chattels of Peter Holliday.    In form, trover is a fiction, says Lord MANSFIELD, but in substance, it is a remedy to recover the value of a personal chattel wrongfully converted by another to his own use. The injury lies in the conversion, which is the gist of the action; and it is for the recovery of damages to the value of the thing converted. To entitle the plaintiff to recover, two things are necessary: First, property, either general or special, in the plaintiff; and, secondly, wrongful conversion by the defendant.    The conversion may be, first, by a wrongful taking of the thing converted, or by an illegal assumption over it, or by a wrongful detention.    *Bacon Ab. Trover,* B; 2 *Saunders* 47, *e. n. l.; Payne vs. Doe,* 1 *T. R.* 56; 1 *Chit. Plead.* 148, 51 52, 53.    Title in another is a good defence to defeat the action of trover.    Whatever shows either a want of title in the plaintiff, upon general issue, or disproves conversion by the defendant, will defeat the action; and this position is sustained by all the authorities.    *Kennedy vs. Strong,* 14 *J. R.* 128; *Schumerhorn vs. Van Vecklenburg,* 11 *J. R.* 529; 3 *Starkie* 1487; 2 *Saund.* 47, 873, *and* 9; 7 *T. R.* 12.    The declaration, in trover, should state that the plaintiff was possessed of the goods as his own property, and that they came to the possession of the defendant by finding.    The omission of the former words is not material after verdict, and the finding is not traversable.    The count, in the declaration now under consideration, would certainly be fatally defective upon a general de-

Sevier *against* Holliday.

murrer, for it wholly fails to state that the plaintiff was possessed of the note, as of his own property, or that it came to the possession of the defendant by finding. It is probable, however, that these defects are cured after verdict. And so we have regarded them in the present instance. The plaintiff, in the action, has wholly failed to support this count, because the evidence introduced upon the trial disproves his title to the note, and clearly establishes the interest in another.

It is certainly true, as has been argued by the counsel, that every legal inference and presumption will be indulged in by this court which the pleadings and proof will warrant in favor of the verdict and judgment below. But where there is no basis to rest such presumptions upon, they are wholly inadmissible. For where the averments, in the declaration, do not, in themselves, show a sufficient title in the plaintiff, no proof adduced upon the trial will supply such omissions, nor can they be aided or supplied by verdict and judgment. In such cases there is no room for the indulgence of presumptions. In the case before us, the defendant below was certainly not guilty of a conversion, because he has not assumed to exercise any illegal ownership over the note. Nor has the plaintiff been injured in the slightest degree, by his conduct in regard to that matter, whatever it may be. The introduction of the receipt, by the plaintiff, according to our construction of it, clearly proves possession and title in another; which unquestionably defeats his own right of action. Where the plaintiff possesses no title, the defendant cannot be held bound to him for an unlawful conversion. This being the case, it necessarily follows that the plaintiff, by his own showing, has no right to recover on his count in trover. The judgment of the court below must therefore be reversed; and leave given the parties to amend their pleadings, if asked for.